BESSIE FRY V. DIXIE MOTOR COACH CORPORATION

No. A-85. Decided April 26, 1944.
Rehearing overruled May 24, 1944.
(180 S. W., 2d Series, 135)

*Helen M. Viglini,* of Dallas, for petitioner.

The testimony of petitioner together with that of her sister and her doctor, on the question of her exposure and illness resulting therefrom, raised an issue of fact for the jury, and it was error for the Court of Civil Appeals to sustain respondent's request for an instructed verdict and in reversing the trial court's judgment and rendering judgment for the respondent. 22 C. J. 612; Portwood v. Portwood, 109 S. W. (2d) 515;

Southern Underwriters v. Girard, 107 S. W. (2d) 775; Gulf C. & S. F. Ry. Co. v. Davis, 225 S. W. 773.

*W. H. Barnes,* of Terrell, for respondent.

Plaintiff's injuries, if any, were caused by her own negligence and failure to exercise ordinary care for her own safety, convenience and comfort, as the evidence, as a matter of law, showed there was no negligence on the part of the bus company in causing plaintiff's injury, consequently it was the duty of that court to reverse the judgment of the trial court and enter the proper judgment, which it did. Texas & Pac. Ry. Co. v. Shoemaker, 98 Texas 451, 84 S. W. 1049; International & G. N. R. R. Co. v. Addison, 100 Texas 241, 97 S. W. 1037; Ramirez v. Salinas, 90 S. W. (2d) 891.

MR. JUDGE HICKMAN of the Commission of Appeals delivered the opinion for the Court.

In the trial court petitioner Bessie Fry recovered judgment against respondent Dixie Motor Coach Corporation for damages for personal injuries sustained by her while a passenger on a bus of defendant en route from Dallas to Neyland Junction, a stop in Hunt County. The Court of Civil Appeals reversed and rendered the case. 177 S. W. (2d) 992.

Since the case was reversed and rendered our statement will be made from petitioner's viewpoint. On the afternoon of February 13, 1942, petitioner purchased a ticket from respondent's agent at Dallas entitling her to transportation over its 3:30 P. M. bus to Neyland Junction. She delivered the ticket to the operator and also delivered to him her baggage, which was stowed in the baggage compartment of the bus, and, being a colored woman, took a seat in that section of the bus set aside for members of her race. There were more passengers at Dallas than could be accommodated by a single bus, and so an extra bus was put on that schedule. Petitioner testified that the operator then instructed her to get off of the first bus and get on the extra, but to change back to the first bus at Rockwall. The operator testified that he told her to remain on the extra until both busses arrived at Greenville, a point beyond Rockwall, unless otherwise ordered by him, but the jury found this issue in her favor. Operators were changed between Dallas and Rockwall and the operator in charge of the extra at the time same arrived at Rockwall testified that before any passengers had gotten off he announced in an audible voice that the extra would

go on into Greenville. Petitioner denied this and the jury found in her favor on that issue. When the extra stopped at Rockwall petitioner alighted and started running for the first bus, at the other end of the block, but just before she got there it pulled out. She then looked back and saw that the extra was pulling out too.

The ticket office in Rockwall was in a drug store. When both busses left her, petitioner went into the drug store and began telling a man who was working there about what had happened to her and was told "You tell the ticket agent that." He showed her the ticket agent and she then told her story to him and asked him what she must do. He advised her, "You see the bus driver that got your ticket." She could not do that for he was gone. She then asked the agent to call and have her baggage set off at Greenville. He refused to do so unless she paid for the call. She left home with money in a purse, but lost it somewhere en route and had no money. To use her language: "He says he ain't going to put in no long distance call. And I says, 'Well, what must I do.' I had lost all the money I had. And I told him that when I got off the bus in Dallas and we were all making that change that I had left all my stuff on the other bus. And he said, well, he just wasn't going to make any call. Well, I says, 'I kind of feel embarrassed, I have lost all the money I have got'." Seeing some men of her own race outside the drug store, she went out here and asked them to help her. They gave her a little change and she went back and gave it the the ticket agent, who then called and had her baggage set off at Greenville.

After the telephone call was put through she asked the agent where was the place for colored people and he informed her that there was no place for colored people. She looked around for a place marked "colored" or for seats or for a rest room but saw none. After the agent told her that there was no place for colored people she thanked him and went outside and stayed on the corner for a while. She next went to a tailor shop where a colored man worked and asked him "* * * was there one there for colored people and he said—I guess it was in the place where he worked, but I could not go into it." She then went back to the corner by the bus stop and later went back to the tailor shop. She testified that it was cold on the streets and that she was looking for a warm place to stay; that the tailor shop was warm, but the man working there said that he was working for white people and that he did not think they would like for colored people to stand around while he was working and she had to get out. It was two hours from the time petitioner arrived in Rock-

wall until she caught the next bus for Greenville. While she was standing on the streeet corner she felt "a deafness in the ear and the air in my head and my throat was not clear. You know know how you do when you have a cold, a dryness in my throat and a cold."

Since the only issue submitted to the jury with reference to petitioner's injuries limited such injuries to those sustained at Rockwall, it is unnecessary to recite further incidents of her hectic journey other than to state that she finally reached Neyland Junction with a severe cold and thereafter suffered from a prolonged illness described by her physician as very severe sinusitis, severe laryngitis and severe bronchial irritation. Her breathing was short and she complained of hoarseness in her speech. She was treated by a physician at Greenville for a time and later at Dallas.

All issues of fact, both as to the primary negligence of the respondent and the contributory negligence of the petitioner were answered by the jury in petitioner's favor and her damage assessed at $500.00.

■ The respondent prosecuted an appeal on three points. The first point was as follows:

"The court erred in overruling defendant's motion for an instructed verdict because the testimony that plaintiff received injuries at Rockwall was against the physical facts and contrary to universal observation, reason and experience, and is against the great preponderance of the evidence." That point was sustained by the Court of Civil Appeals and judgment was accordingly rendered that petitioner take nothing. We call attention to the fact that the point does not raise a question of the sufficiency of the evidence to support the jury findings on the special issues. The error complained of was one of law, namely, the failure of the court to give a peremptory instruction. While it is stated that the testimony that the petitioner received injuries at Rockwall was against the great preponderance of the evidence, such statement was made only as a part of the reason why the court erred in not giving a peremptory instruction. By inserting that clause respondent did not thereby present in one point two questions for decision, namely, the question of law that there was no evidence warranting the submission of any issues to the jury and the question of fact that the evidence was insufficient to support the verdict. Hall Music Company v. Robertson, 117 Texas 261, 1 S. W. (2d) 857.

■ Dr. Watts, who testified as a witness for petitioner, on cross examination expressed the opinion that a person would not "contract sinus" from exposure unless the temperature was below 50. A report from the U. S. Weather Bureau at Dallas for the day in question disclosed that the temperature there at the time petitioner reached Rockwall, 26 miles away, was 63 degrees and that two hours later when she left Rockwall the temperature had fallen to 59 degrees. Based upon this evidence the Court of Civil Appeals concluded that "petitioner simply could not have sustained the injuries at Rockwall testified to by her." In so holding the court, in our opinion, fell into error. If Dr. Watts had testified that, in his opinion, petitioner sustained no injuries as a result of her treatment and exposure at Rockwall, such testimony would, at most, have done no more than raise an issue of fact, for opinion evidence is not conclusive of a fact issue. Simonds v. St. Louis, B. & M. Ry. Co., 127 Texas 23, 91 S. W. (2d) 332; Coxson v. Atlantic Ins. Co., 142 Texas, 544, 179 S. W. (2d) 943.

But his testimony did not go that far. It went no further than that, in his opinion, the exposure at Rockwall could not have caused petitioner to suffer all the infirmities with which he found her to be suffering; that it did not cause her to "contract sinus." The jury evidently adopted that view, for it awarded her only $500.00 in damages, of which $150.00 was for doctors' bills. It should not be overlooked that the pleadings and evidence did not limit her injuries to sinus infection and bronchitis. She alleged, and introduced evidence in support of the allegation, that as a result of her exposure she contracted a cold out of which grew other infirmities and that she suffered great physical and mental pain. Certainly she was entitled to some amount of damages for all of that.

In submitting the case the trial judge called on the jury to find whether or not petitioner sustained injuries at Rockwall. The charge did not limit the cause of such injuries to exposure and neither did it limit the effects thereof to any particular infection. The word "sinus" was not used. Among the elements of damages which the jury was authoried to consider were physical pain and mental suffering. Common colds are attended with much misery and discomfiture and often lead to serious consequences. The jurors knew that and also could infer that petitioner's cold was brought about by her treatment and exposure at Rockwall. There is no need to pursue the question further. We just disagree with the conclusion of the court of Civil Appeals and it therefore becomes our duty to set aside its judgment.

Looking to the brief filed by the respondent as appellant in the Court of Civil Appeals for the purpose of determining whether a proper judgment was rendered by that court, we find that it was assigned there that petitioner should be denied recovery on the ground that, if she received any injuries at Rockwall, they were caused by her own negligence and failure to exercise ordinary care for her own safety and comfort. The Court of Civil Appeals overruled the contention without discussing it. We thing the facts above recited fully justify the ruling of that court on this question. They fall far short of establishing contributory negligence as a matter of law.

Still another point was presented in the Court of Civil Appeals, but in its brief filed here respondent does not rely upon it and it need not therefore be discussed.

Since only questions of law were presented to the Court of Civil Appeals, there is no occasion for remanding the case. Ochoa v. Winerich Motor Sales Co., 127 Texas 542, 94 S. W. (2d) 416; Liberty Film Lines v. Porter, 136 Texas 49, 146 S. W. (2d) 982.

The judgment of the Court of Civil Appeals is reversed and that of the trial court affirmed.

Opinion adopted by the Supreme Court April 26, 1944.

Rehearing overruled May 24, 1944.