**MOORE v. MOORE.**
No. 14744.

Court of Civil Appeals of Texas.
Fort Worth.

Jan. 25, 1946.

Rehearing Denied March 8, 1946.

930

Oliver W. Fannin, of Fort Worth, for appellant.

Frank Graves, of Fort Worth, for appellee.

SPEER, Justice.

Appellant, Elizabeth H. Moore as plaintiff below, instituted this suit against appellee, Lonnie B. Moore, as defendant, seeking a divorce and a division of property; she claimed that certain funds were her separate property and that all the remainder was community. She prayed for attorney's fees as against her husband.

Appellee answered by general denial and a special plea of cross action for divorce, and asserted that specified funds were his separate property, that all other funds were community and sought a division of the community property.

Trial was to the court without a jury; judgment for divorce upon the petition of appellant was entered. Appellant was denied recovery of certain funds claimed as separate and appellee recovered some of the funds he claimed as separate property. The court found that $400 was a reasonable attorney fee and gave her judgment against the husband for one-half of that amount. The wife being dissatisfied with the judgment has appealed.

No dispute arises here as to the sufficiency of the pleadings, and we find no fault with them.

Appellant relies upon five points of error which may be classified and consolidated into three. They are in substance: (1) Error of the court in finding that the $1,550, originally the separate property of appellee, had not been intermingled and commingled with community 'funds so as to lose its identity as separate funds. (2) Error of the court in holding that $1,500, originally the separate property of appellant, had been so intermingled and commingled with community funds as to lose its identity as her separate property. And, (3) error in entering judgment for appellant for only $200 or one-half of the attorney's fee against appellee.

It is apparent from the judgment as a whole, that the court undertook to award to each of the parties such of the funds and jewelry on hand as appeared to be their separate property and to divide the community property equally according to the long-standing principles announced in the early case of Fitts v. Fitts, 14 Tex. 443, and the many cases following it on down to and including McGarraugh v. McGarraugh, Tex.Civ.App., 177 S.W.2d 296.

Points of error one and two challenge the findings of the court in determining what was and what was not the separate property of the respective parties.

We deem it appropriate to make some observations, just here, of some of the cardinal principles of law applicable to the respective claims of property here involved.

All property owned by either spouse prior to marriage remains separate property after marriage. All property acquired by either during coverture, by gift, devise or descent is separate property as distinguished from community. Moneys received by an ex-soldier after marriage for services rendered to the government prior to marriage become his separate property; 23 Tex.Jur., 140, § 111, citing Johnson v. Johnson, Tex.Civ.App., 23 S.W. 1022. If the "bonus money" received by

appellee in this case were additional compensation to that formerly paid by the government to him for services rendered, the services were performed before marriage, and his rights thereto existed at the time of marriage, and if the "bonus" were a gift by the government it fell within the rule of gifts during coverture. We are not attempting to adjudicate any other form of compensation to soldiers; they are not before us.

■ It is the generally recognized rule in this state that if a bank checking account contains both separate and community funds, all commingled in such a way that neither can be distinguished from the other, the whole must be considered community property. Smith v. Buss, 135 Tex. 566, 144 S.W.2d 529, 532.

Appellee testified substantially that since his marriage to appellant in 1920, he received from the U. S. Government $1,789 as a "bonus" for services rendered by him as a soldier in World War I. That he deposited that money in The First National Bank of Fort Worth in a savings account. (Subsequent testimony reveals that he deposited only $1,550 of that money in the savings account.) He said that the bonus money was all that he put in that account; that he had a checking account in another bank; that he purchased a $2,100 note for $2,000 and put his bonus money from the savings account into that purchase. "I took from the bank and gave a check for the balance to make $2,000.00." (This made the total purchase price of the note.) "I put my bonus in on that note." He said the $2,000 note so purchased bore six or seven per cent interest and was repaid in monthly installments over a period of about eight years, and all installments went back into the savings account in The First National Bank of Fort Worth; that at the time of trial the note had been fully paid, the last installment having been paid about two months before the trial. In response to a question asked he said he never had commingled his bonus money with community funds. "That is the only money, bonus money, in The First National Bank, and it is a savings account." At another part of his testimony he said there was, at the date of trial, $2,458.69 in the savings account in The First National Bank. That the excess in the bank, over the amount of his bonus money invested in the note, was the $100 discount which he got when he purchased the note, and the accumulated interest on the note while it was being paid.

The banker in charge of the savings account said the first deposit was $1,550 made on June 25, 1936, and that on July 3, 1936, he deposited $35; on July 11, same year, $50; and on October 5th, same year, $863; and on June 15, 1937, $19.85. That in January, 1937, there was $2,500 in the account. The witness said that the account dropped down to $10 in May, 1937.

Appellee was recalled and admitted that he must have been mistaken about having placed the whole of his bonus money check in the savings account when he opened it, but reaffirmed that all money in that bank over and above the amount he did open the account with ($1,550) was community funds. He said he and his wife had a checking account in the Fort Worth National Bank upon which they drew at all times to pay their household expenses.

■ There are many discrepancies between the testimony of appellee as to how the funds were handled and the testimony of appellant and the banker, but it remains that there is no dispute of the fact the bonus fund was originally appellee's separate property and that $1,550 of the amount was deposited in the savings account and was used, along with community funds, to make up the difference between the bonus fund and $2,000 to purchase the note. The precise source from which the community funds came is not disclosed. The trial court held that the $1,550 of bonus money had not become so commingled with community funds as to lose its identity, and awarded to appellee, as his separate property $1,550, holding that the remainder of the account was community. Apparently the trial court, as trier of the facts as well as of the law, discarded such of the testimony that conflicted with that of appellee and gave credence to his testimony. From the record before us we are unwilling to say that the testimony given by appellee, although contradicted, was without probative value, such as to authorize this court to substitute our own judgment for that of the trial court who tried and determined the issues of fact. Long-Bell Lumber Co. v. Bynum, 138 Tex. 267, 158 S.W.2d 290.

■ Second point asserts error because the court found that the moneys received by appellant from her parents' estate by inheritance had become so intermingled

with community funds, as to lose its identity and was treated by the court as community. The testimony reveals that she did receive $1,459.50 from the source mentioned during the time the parties were married. It also appears from her testimony that she began working on January 1, 1942, earning at the beginning of her employment, $25 per week and was earning $34.50 per week at the time of trial. It does not appear just when changes in her salary occurred. She said she had placed the funds inherited by her in The First National Bank of Fort Worth in her own name. That since she began work she deposited her earnings in the same account. She said she had on hand between $700 and $800 at the time she instituted this suit (May, 1945). She also said that she had expended the difference between her inherited funds and her wages deposited with it, and the $700 or $800 she had on hand, when she filed suit, for living expenses and in gifts to their son who was a student in a medical college.

It is obvious that she had received and deposited with her $1,459 inherited funds approximately $4,000 in wages during the three and a half years, and up to the time she filed suit had checked it out for expenses and gifts to the son down to $700 or $800. However, she said that at the time of the trial (September, 1945), she had in that fund $2,400. No explanation is made as to how the fund increased from $700 or $800 to $2,400 between May and September, 1945. Upon this state of facts the court held that her inherited funds had been so commingled with community funds that it had lost its identity as her separate property.

It may be observed that since the institution of this suit and prior to the trial, the parties have, by mutual consent, sold their home for $7,500 and divided the proceeds of sale equally. Appellant did not attempt to explain where the money she received from this source was deposited. We think it not improbable that it was deposited with her other funds and to some extent accounts for the $2,400 she said she had on hand at the time of trial. We hold that there is sufficient evidence to support the court's findings upon which he entered judgment in this respect.

Third point of assigned error is because the court gave appellant judgment for only one-half of the amount found to be the

reasonable amount of an attorney's fee to her counsel in representing her in this suit. It is argued that she was entitled to judgment against the appellee for the entire amount of the fee, which the court found to be $400, as a reasonable one.

Appellee, in his brief, does not reply to the specific contentions of appellant, but relies upon a counter proposition that since there was no testimony as to what was a "reasonable" attorney's fee, the court should not have awarded judgment to appellant for any amount. He cites and relies upon cases in which parties had sued railway companies for claims and sought reasonable attorney's fees under the provisions of article 2226, R.C.S. That statute is in the nature of a penalty imposed upon the companies for failure to pay claims under the conditions therein set out. In such actions brought under that statute, it has been held that to entitle one to recover attorney's fees, he must strictly follow its provisions and make proof that the fee sought is a reasonable one. St. Louis Southwestern R. Co. v. Claybon, Tex.Civ. App., 199 S.W. 488; this is one of the cases cited by appellee to sustain his contentions.

In cases like the one before us, strictly speaking, there is no specific statutory provision in this state for the recovery by the wife of an attorney's fee to cover her expense for prosecuting her suit for divorce. If such fee be classed as "necessaries" as has been done by our courts, then we do have a statutory provision covering it, to which statute we shall later refer; such fees for necessaries are not in the nature of penalties, as in the above cited cases, and the same strict rule of evidence will not be applied as in Article 2226, supra. Certainly the fee allowed by the court in divorce cases must be reasonable, but the trial court, in such cases as this, may within his discretion determine whether the fee to be allowed is a "necessary" under the circumstances and likewise determine the amount. Even in cases where there are statutory provisions for the allowance of an attorney's fee, not in their nature penalties, there seems to be a different rule of evidence, when the case is tried to the court. In garnishment cases where the statute authorizes the allowance of a reasonable fee to the garnishee when discharged on his answer, the court may assess such fee as may appear to him right and reasonable without evidence specifi-

cally proving it. Johnson v. Blanks, 68 Tex. 495, 4 S.W. 557; May v. Donalson, Tex.Civ.App., 141 S.W.2d 702.

Referable to the amount of the fee for legal services claimed by appellant in this case, all the testimony offered was that of her counsel. He testified at length as to the nature of the services rendered by him; the many conferences with appellant and with appellee and his counsel in an effort to work out their differences; that counsel was an active practitioner and had handled many such cases, and while he never did give his opinion or conclusion as to just what amount would constitute a "reasonable" fee he did say in substance that from his experience the services rendered by him to appellant were easily worth a minimum of $750.

Moreover, if it could be said that in such cases as this direct proof must be made of the reasonableness of the fee to be allowed, as contended by appellee, such proof would of necessity be from expert witnesses and their testimony would of course be their opinion on the question. Appellant's counsel qualified as an expert and detailed the facts showing him to be such. If the witness had expressed his opinion as to what would have been a "reasonable" fee it would not necessarily have been binding on the trial court trying the facts. The court could not arbitrarily disregard the expert testimony but would consider it along with his own experience and observation in such matters. Simmonds v. St. Louis B. & M. R. Co., 127 Tex. 23, 91 S.W. 2d 332; Coxson v. Altanta Life Ins. Co., 142 Tex. 544, 179 S.W.2d 943; Fry v. Dixie Motor Coach Corporation, 142 Tex. 589, 180 S.W.2d 135; Maryland Casualty Co. v. Hearks, Tex. Sup., 190 S.W.2d 62. We think there is no merit in appellee's contention that because there was no direct proof of the reasonableness of the fee, none should have been allowed.

The appellant poses a difficult question to us when she complains because the court gave her judgment for only one-half of the amount he found to be a reasonable attorney's fee for representation by her counsel and insists that she was entitled to recover from appellee the full amount.

There are many cases in this state holding that a wife who prosecutes her suit for divorce and division of property, in good faith with probable cause, may recover a reasonable attorney fee against the husband. 15 Tex. Jur. 650, §§ 154 and 156, and the many cases there cited in footnotes. There are several cases decided upon the point since the publication of the text of Texas Jurisprudence above cited. We mention some of them: Robbins v. Robbins, Tex. Civ.App. 125 S.W.2d 666; Jacks v. Teague, Tex.Civ.App., 136 S.W.2d 896; writ dismissed; Locke v. Locke, Tex.Civ.App., 143 S.W.2d 637; Brown v. Brown, Tex.Civ. App., 152 S.W.2d 790, writ refused for want of merit.

In the instant case it is quite plain that appellant filed this suit in good faith with probable grounds for divorce. The evidence in support of her contentions as grounds for divorce is clear and convincing, so much so that the trial court at one time during the trial admonished appellant's counsel to desist from offering further testimony. The court indicated that he had heard plenty to sustain her petition. Appellee had filed a cross action for divorce and appellant's counsel desired to disprove all he had alleged. Counsel was offering many letters written by appellee to appellant trying to induce her to return, but in view of other testimony in the record, the trial court was not impressed with the type of solicitude exhibited by him. The court entered his decree of divorce upon appellant's petition and proof.

We have carefully read all of the cited cases as well also those referred to in support of the holdings announced and find that in every case which discusses the reason for so holding they are based upon the theory that such fees are in the nature of necessaries for the complaining wife, and therefore payable by the husband. We find no fault with the course of reasoning in the several cases. We can see every reason to believe that such relief to an aggrieved wife can be properly classed as necessaries as that term is used in the statutes. But to give full significance to the fact that such fees constitute necessaries for which the husband is liable, we must look to the statute which makes the husband liable for "necessaries" for his wife. By Article 4620, R.C.S., it is provided that the community property shall be liable for the debts contracted during marriage except in such instances as are specially exempted by law. By Article 4621 it is provided substantially that the community property shall not be liable for the contracts of the wife except for necessaries furnished herself and children unless the husband joins in the contract. By

934

Article 4623 it is provided in effect that neither the separate property of the husband nor the community property other than the personal earnings of the wife and the revenues from her separate property shall be subject to the payment of debts contracted by the wife, except those contracted by her for necessaries furnished her. Construing all these articles together it would seem that both the community property and the husband's separate property are subject to the payment of debts incurred by the wife for necessaries.

It is academic that, generally, the husband is responsible for the support and maintenance of his wife and family, and that he may pay such expense first from community funds if there be such, and if none, then he must pay from his separate property.

To advert to the facts in the case before us, the trial court evidently found that an attorney's fee in this case was one of those "necessaries" provided for by statute and by his judgment named a reasonable fee of $400 and said: "That of this amount the defendant (appellee) should be required to pay $200.00 and the plaintiff (appellant) the remainder."

We should bear in mind that the court was granting to appellant a divorce determining whether or not the $1,550 "bonus money" and the $1,600 received by appellee as gifts were his separate property; and also deciding whether the $1,459 received by appellant from the estate of her parents had become so commingled with community property as to lose its identity, and whether the diamonds and other valuable jewelry were gifts from appellee to appellant, and dividing equally, over $13,000 in cash found by him to be community property and ordering sold and the proceeds equally divided, an automobile, three notes and certain insurance policies (the amounts and values of these items are not shown). We are unable to tell from the record whether or not the proceeds of the home were included in these funds.

In Wilson v. Wilson, Tex.Civ.App., 231 S.W. 830, 831, the aggrieved wife was denied the recovery of an attorney's fee and the court said: "In a proper case the trial court has authority to render a judgment in favor of the wife for an attorney's fee when sued for divorce. However, the right to such an attorney's fee is largely within the discretion of the trial court." It will be noted that the cited case was one in which the wife had been sued, but we can see no difference in principle, if the fee be "necessaries" than in a case in which she sues. The degree of success attained by her in the suit is immaterial.

Becker v. Becker, Tex.Civ.App., 299 S.W. 528, was a case for divorce, custody of children and the division of property, tried to a jury. The jury found that a designated amount was a reasonable attorney fee. The court entered judgment awarding the custody of the children to the wife and decreed that the attorney's fee found by the jury be paid one-half by the husband and the other half by the wife, as was done in the instant case. The appellate court reformed that judgment so that the husband should pay the whole fee upon the theory that it was in the nature of necessaries, as other courts had so frequently done. We cannot entirely harmonize that holding with the view we take of the instant situation; this for the reason if the amount to be named as a fee is within the discretion of the trial court, in the absence of a finding by the appellate court that the trial court abused that discretion, it has no power to substitute its own opinion for that of the trial court. Nothing in the opinion cited indicates that the appellate court so found. Custody of children was involved in the cited case, and under Article 4638, R.C. S. the trial court has a wide discretion to divide the property in such a way "as [he] shall deem just and right." But there is nothing in the Becker case to indicate that the trial court undertook to divide the property under that statute; if that course was pursued by the trial court in that case, again we find the appellate court revising that discretionary matter without a finding of abuse of discretion.

So far as we are able to find, no court in this state, in finding that an attorney's fee in divorce cases becomes one of those necessaries provided by statute that the husband must pay, has gone back to the provisions of Article 4620 et seq. which set out the liability of the husband and the funds from which he must pay for those "necessaries." For these reasons we are not inclined to follow literally all that may be inferred from the language used in Becker v. Becker, supra.

In the instant case the court named what he deemed a reasonable attorney's fee at $400. Assuming that the court made this finding because of the universal ruling of the courts that such a

fee was in the nature of "necessaries" for the protection of the wife's property rights, we must also presume that when he decreed that each of the parties should pay half the fee, he knew that there were community funds in the husband's hands more than sufficient to pay the whole fee, and that the community property was primarily liable for the payment of her contracts for necessaries. The division of the fee made by the trial court had the practical effect of taxing the whole fee against the husband to be paid out of community funds.

When we view this whole record and the respective contentions of the parties we see no such inequities or abuse of judicial discretion in the judgment concerning attorney's fee, as to present reversible error. We therefore overrule all points of error and affirm the judgment as entered.