Rosalie **LATHERN** et al., Appellants,

v.

**MISSOURI–KANSAS–TEXAS RAILROAD COMPANY OF TEXAS**, Appellee.

No. 3892.

Court of Civil Appeals of Texas.

Waco.

Sept. 21, 1961.

Appellants' Motion for Rehearing Denied Oct. 12, 1961.

Appellants' First Amended Motion for Rehearing Denied Oct. 26, 1961.

Bryan, Maxwell, Wilson & Olson, Waco, for appellants.

Naman, Howell, Smith & Chase, Waco, for appellee.

TIREY, Justice.

The action is grounded on a crossing collision. Plaintiffs alleged various grounds of common law negligence and also specially plead the doctrine of discovered peril. At the conclusion of the testimony plaintiffs waived their common law grounds of negligence and requested the Court to submit the cause under the doctrine of discovered peril. Each of these issues was answered in favor of the defendant as to the fireman Davis, and in favor of the plaintiffs as to the engineer Butcher. The Court overruled plaintiffs' motion for judgment and granted defendant's motion to disregard the answers to certain issues therein named, fixing liability against the railroad,

and granted defendant's motion for judgment non obstante veredicto. The pertinent issues, absent the burden of proof clause, are substantially:

1. *Do you find that immediately* prior to the collision, W. C. Lathern was in a position of peril? Answer "Yes".

2. Do you find that G. H. Butcher, the servant and employee of defendant, discovered the position of peril prior to the collision? Answer "Yes."

3. Do you find that Butcher realized that Lathern could or would probably not be able to extricate himself from the position of peril? Answer "Yes."

4. *Do you find that Butcher dis-*covered the position of peril of Lathern in time to avoid the collision by the use of all means at his command with due regard for the safety of himself and others occupying the train? Answer "Yes".

5. Do you find that Butcher, after making such discovery, failed to use the means, if any at his command? Answer "He failed."

6. Do you find that the failure of Butcher to exercise all means at his command was negligence? Answer "Yes."

7. Do you find that such negligence was a proximate cause of the collision and injuries? Answer "Yes."

8. *Do you find that James Davis,* the fireman, discovered the position of peril of Lathern prior to the collision? Answer "No."

The jury found that the collision was not an unavoidable accident, and fixed damages to Mrs. Lathern and her children, in the sum of $30,000. The court overruled plaintiffs' motion for judgment and granted defendant's motion to disregard the answers of the jury to Issues 4, 5, 6, and 7, and set the answers aside and decreed that plaintiffs and the intervenor take nothing. The plaintiffs and intervenor timely excepted to the ruling of the court and gave notice of appeal to this court, and have duly perfected their appeal.

The judgment is assailed on one point. It is to the effect that the court erred in granting appellee's motion for judgment non obstante veredicto, because the evidence raises the issue of discovered peril. Plaintiffs, in their brief, say that since the jury answered the issues on the doctrine of discovered peril against the railroad, the trial court should have allowed the verdict to stand because we must "presume to be true the evidence which was favorable to the plaintiffs; it must also place upon the testimony favorable to him the most liberal construction in his favor that the evidence would reasonably bear, giving him the benefit of all reasonable inferences arising therefrom. Indeed all evidence contradictory to that favorable to the plaintiff should be disregarded." Citing Felder v. Houston Transit Co., Tex.Civ.App., 203 S.W.2d 831; White v. White, 141 Tex. 328, 172 S.W.2d 295; Stevens v. Karr, 119 Tex. 479, 33 S.W.2d 725; Ford v. Panhandle & Santa Fe Ry. Co., 151 Tex. 538, 252 S.W.2d 561.

Plaintiffs further contend that the jurors, in arriving at their verdict, were justified in doing the following:

"(1) Disbelieving a witness though he is neither impeached nor contradicted. Cheatham v. Riddle, 12 Tex. 112.

"(2) Believing one witness and disbelieving others. Ford vs. Panhandle & Santa Fe Ry. Co., 151 Tex. 538, 252 S.W.2d 561.

"(3) Resolving conflicts and inconsistencies in the testimony of any one witness as well as the testimony of different witnesses. Benoit vs. Wilson, 150 Tex. 273, 239 S.W.2d 792.

"(4) They are not required to depend on evidence from any single

source. Texas & N. O. Ry. Co. vs. New, Tex.Civ.App., 95 S.W.2d 170, 174.

"(5) They may accept or reject in whole or in part opinion testimony. They may accept lay testimony over that of experts. Opinion testimony does not establish material facts as a matter of law. Hood v. Texas Indemnity Ins. Co., 146 Tex. 522, 209 S.W.2d 345; Fry vs. Dixie Motor Coach Corporation, 142 Tex. 589, 180 S.W.2d 135; Coxson vs. Atlanta Life Ins. Co., 142 Tex. 544, 179 S.W.2d 943.

"(6) If the opinions of the experts as given in the evidence do not comport with the jurors' idea of sound logic, the jurors have a right to say so. Maryland Cas[ualty] Co. vs. Hearks, 144 Tex. 317, 190 S.W.2d 62, 64."

Plaintiffs contend that the application of the foregoing rules of law to the factual situation here supports the jurors' finding to the effect that Butcher discovered the perilous position of Lathern in sufficient time to avoid the collision by the use of all the means at his command, and that the engineer, after discovering the perilous position of the truck driver, failed to use all the means at his command to avoid the collision.

Evidence was tendered to the effect that the engineer was operating the train at a rate of speed of 60 miles per hour, traveling from Dallas to Waco; that he was occupying a seat 12 ft. 6 inches above the track, and that the road on which the truck was traveling came into view 1,450 feet prior to the time the train reached the crossing; that the engineer was looking west and continued to look west down the road on which Lathern was approaching until after he, Butcher, crossed over the crossing; that he did not see the truck until the train was on the crossing and the truck was 100 ft. away. Plaintiffs further contend that a study of the plat tendered in evidence shows that the engineer

had an uninterrupted view of the truck from his elevated seat from a distance of 1,450 ft. to the crossing, except for a small area of about 400 or 500 feet from the crossing; that the truck was heavily loaded with gravel (5 yards); that the engineer realized that this was a dangerous crossing and was keeping an extra careful lookout. Appellants contend that the jury was justified in finding that the gravel truck was observed by the engineer at a point 1,450 ft. from the crossing. Plaintiffs also contend that since fireman Davis testified that at about 10 seconds before the impact the engineer stated "I believe that truck is going to hit us" and that since the train was going 60 miles per hour, that if the jury believed this statement, which they did, that the engineer observed the truck and realized its perilous position when the train was 880 feet from the crossing. Plaintiffs further contend that the witness Dean, who saw the accident and who was behind the truck and observed the train coming from the north said "My thought was 'My God, are they going to get together' and I speeded up." Appellants contend that since Dean testified to the effect that when he observed the train and the truck, that the truck was approximately 400 feet from the crossing, and since the speed of the truck was estimated at 30 to 45 miles per hour, and taking the lowest estimated speed of 30 miles per hour, that if and when the truck was 400 feet from the crossing, the train was approximately 800 feet from the crossing, and they contend that Dean's point of realization was approximately the same as that of the engineer, as testified to by fireman Davis. As we understand plaintiffs' position it is to the effect that the foregoing evidence is sufficient to support the jury's finding that the engineer discovered the perilous position of the truck driver at a point as far as 800 feet from the crossing, and that in view thereof the evidence supports the jury finding that the discovery having been made at this point, that such distance was a sufficient one from the crossing for the engineer, by the use of

all the means at his command, to have avoided the collision.

■ We are not in accord with plaintiffs' contentions, for reasons hereinafter mentioned. The sole question before us is whether or not there is any evidence to raise the various elements of the doctrine of discovered peril as it relates to the engineer and as submitted to the jury in the court's charge. The crucial question is whether the perilous position of the deceased was discovered by the engineer in time to avoid the accident by the use of all the means at his command. In answering this question we must decide first, whether there is any evidence to refute the affirmative testimony of the engineer that he discovered the perilous position of the truck when the train was "practically on the crossing" and the truck was about 100 feet away. It is true that the jury had a right to disbelieve the engineer, but such disbelief will not take the place of and supply affirmative evidence to the contrary. See Missouri-Kansas-Texas Railway Company v. McFerrin, 156 Tex. 69, 291 S.W.2d 931. Is there any evidence that at the time and after the deceased entered the position of peril or the zone of eminent danger that the engineer could have done anything which he failed to do to avoid the accident, assuming that he was watching the truck at all times as it approached the crossing? We think the answer is "No." Here, we are face to face with the question as to whether there is any evidence that after the deceased entered the position of peril or the zone of imminent danger, there was anything that the engineer could have done which he failed to do, to avoid the accident, assuming that he was watching the truck at all times as it approached the crossing. As above stated, the train was proceeding south at 60 miles per hour, and was struck on the side by the truck, which had been proceeding east, and the speed of the truck was estimated at between 30 and 45 miles per hour. The only positive testimony (of probative force) places the first impact of the truck with the side of the train at a

point 147 feet back of the front of the engine; evidence was tendered to the effect that it takes from 3 to 4 seconds for a train such as the one involved here, to begin to slow down, or for the brakes to have any effect after the brakes are applied. Appellees claim that there is an absence in this record of:

"1. *Reaction* time of a person such as the engineer, following perception of a danger to react and manually apply brakes or take other action.

"2. The *deceleration rate* or *stopping distance* of this train or any other train, traveling at a rate of speed of 60 miles per hour or any other speed, after an emergency brake application, or any lesser brake application.

"3. The *stopping distance* of the truck in question or any other similar truck or vehicle traveling at between 30 to 45 miles per hour."

We are in accord with this view.

As we understand appellants' position, it is to the effect that since the truck might have been seen for some distance prior to the time the engineer testified that he actually saw the truck, that this fact, which the jury could have believed, under all the surrounding facts and circumstances, may be used as evidence that he did see the truck at sometime before he said he saw it, and also as evidence of the time when the engineer should have applied the brakes on the train. Such view is not applicable to the doctrine of discovered peril. The court instructed the jury, in part, as follows: "That a person is in a position of peril when he is in danger of serious bodily injury or death, and it reasonably appears from the circumstances that he cannot or will not be able to extricate himself therefrom." (the definition is not assailed).

The critical issue of discovery in time did not begin until after Lathern was in a position of peril, as he could not be discovered in such position, in any event, until after

he was there. So the exact question before us is: When did the truck enter a position of peril? At most, this was a short distance before the truck reached a position where Lathern could not stop his truck prior to reaching the crossing. The evidence is silent as to what that distance was, would or could have been; but our view is that under no circumstances could such distance have been more than 150 feet from the crossing. Prior to that time, if the engineer had been watching Lathern, he would have had every reason to believe that Lathern would stop, as the law required. The evidence is without dispute that the truck was heavily loaded with gravel (5 yards) and that the grade was slightly rising as the public road approached the crossing. The fact that the engineer did not see Lathern until a later time, does not increase the responsibility to the appellee under the doctrine of discovered peril, although it might have raised an issue of negligence under failure to keep a proper lookout. But since plaintiffs requested the court to submit the cause solely on the ground of discovered peril, this question passed out of the case. Moreover, if we assume for the sake of argument that the engineer was constantly observing the truck as it approached the crossing, which is without support in the evidence, and that he realized the truck's perilous position immediately after the truck entered such position, the question then to be decided is whether there is any evidence that after the deceased entered a position of peril, the engineer could have then avoided the accident. As above stated, there is no evidence in this case of braking distance, deceleration rate, or reaction time. But plaintiffs contend that this is not required under the pronouncements in Creech v. Thompson, 156 Tex. 561, 297 S.W.2d 817, 821. We think that case is clearly distinguishable from the case at bar. The Creech case involved a pedestrian located on a narrow bridge over flooded water, where the only escape was by running off the end of the bridge. The train operatives had seen people on the bridge for sometime prior

to the application of the emergency brake. The worker ahead of Creech escaped without injury, and the plaintiff needed only a mere "instant" to escape. The court, in discussing this situation said:

"As to the difference between merely seeing the men and realizing their peril, we think [that] the jury might properly have believed that under the peculiar circumstances, seeing was the equivalent to realization. In this connection there would seem to be no great distinction between the situation of an automobile stalled on the track, as in Texas & N. O. R. Co. v. Goodwin, supra, ([Tex.Civ.App.] 40 S.W.2d 182, writ of error ref'd) and men caught in the middle of a narrow bridge over a stream which train operatives knew to be flooded. * * *

"Clearly all the additional time that Creech needed was a mere instant—the instant necessary for him to cover, running, the one or two steps separating him and his companion, who actually escaped."

Can we apply the foregoing pronouncement to the case at bar? we think not, because under all the evidence, the deceased needed more than a mere instant to clear the track. Since the speed of the train was 60 miles per hour, or 88 feet per second, and since the train was hit 147 feet from the front, according to the positive testimony, it is obvious that the front of the train had passed over the crossing approximately 1.67 seconds before the impact. Appellants assert that the train was 10 feet wide, and that the truck was at least 15 feet long. It follows that in order to have avoided the accident, the train would have had to have been slowed down an additional period of time to have allowed the truck to pass safely in front of the train. At 45 miles per hour, this would take an additional .37 seconds, or at 30 miles per hour, an additional .57 seconds. In any event, the train would have had to have been delayed for a period of over two seconds in reaching

the crossing for the accident to have been avoided. The question arises, How far back would the brakes have had to have been applied? Such evidence is absent. We think under the evidence it would have had to have been a long distance from the crossing, and at least several seconds before the deceased was in a position of peril. It is our view that since the record is silent as to the deceleration rate of the train after the application of the brakes, it was impossible to determine how long prior to the accident it would have been necessary to apply the emergency brakes in order to have reduced the speed of the train a sufficient amount to have given the additional time required for the truck to clear the crossing. We think it is obvious that the breaks would have had to have been applied a long time prior to the time that any liability could be imposed on the appellee in this cause.

But appellants say that the "jury was justified in finding that if full or emergency power had been applied at the point of discovery, 800 feet from the crossing, the train could have been completely stopped before the crossing". Appellants, in this connection, assert that when the train was 800 feet from the crossing, and the truck over 400 feet from the crossing, that the truck was in a position of peril. We think that this contention cannot be sustained, because there is an absence of testimony that the engineer realized that the truck driver would not or could not extricate himself from such danger. It was plaintiffs burden to supply the testimony to support such fact finding and this, they failed to do. But if we be mistaken in this view, even at 800 feet from the crossing, there is no evidence that by the application of the emergency brake, the collision could have been avoided.

As we have previously stated, the truck was hauling gravel, and he had a heavy load, and there is no positive evidence as to where the truck was when the train reached the crossing, and the testimony of Dean as

to the distance of the truck from the crossing at the time he observed the truck and the train is only an estimate. Of course it is true that the engineer's estimate of the distance of the truck from the crossing at the time he first observed it, was 100 feet; but it was the burden of the plaintiffs to prove by affirmative evidence that the engineer saw the truck driver when he was approximately 400 feet from the crossing, and that he failed to use all the means at his command to avoid the collision. This the plaintiffs failed to do.

But appellants contend that they are entitled to judgment on the jury verdict under the doctrine announced in Ford v. Panhandle & Santa Fe Railway Company, supra. We cannot agree with that contention. In the Ford case, the front of the engine hit the automobile on the rear fender, at which time the automobile lacked only 3 or 4 feet of crossing the track in safety. Moreover, the train was traveling at approximately 10 or 15 miles per hour, and the fireman on whose side the automobile approached, testified to the effect that he discovered the plaintiff's peril when the train was 90 to 100 feet, or approximately "100 feet from the crossing." The court held that allowing for normal reaction time, a prompt application of the emergency brakes might have allowed the plaintiff's automobile to pass over the track in safety. The factual situation is quite different, here. Under our record, it would have taken 3 or 4 seconds after the brakes were applied before they became effective, and before the train could have begun a reduction in speed. Here, there is no evidence in the record as to reaction time, upon which point the plaintiffs had the burden of proof.

For the purpose of computation, let us assume that the jury might consider an overall elapse of time of 4 seconds before the brakes began to take effect. In 4 seconds, at 60 miles per hour, the train would have moved 352 feet, and the truck, at 45 miles per hour, would have moved 264 feet, or at 30 miles per hour, 176 feet. Had this accident been a front end collision, the

vehicles would have still collided, if the brakes had been applied when the truck was 176 feet to 264 feet from the crossing. An additional time would have been required because the truck would have had to clear the crossing before the train arrived. In this case, all the probative evidence is to the effect that the truck hit the side of the train, and it is apparent that the brakes would have had to have been applied 4 seconds before the train reached the crossing, plus the period of time the train traveled past the crossing before the impact, in order for the train to have even begun to slow down at the time of reaching the crossing. Under the assumption here made, it was approximately 5.67 seconds before the impact (147 feet past the crossing or 1.67 seconds plus 352 feet, or 4 seconds) when the front of the train was 352 feet from the crossing. Under the assumption here made, the truck would have been 375 feet from the crossing, traveling at the rate of 45 miles per hour, or if it were traveling at the rate of 30 miles per hour, it would have been 250 feet from the crossing. We think it is obvious that the loaded truck could not have been in a position of peril at 375 feet from the crossing, nor at 250 feet from the crossing, and yet an application of the brakes at that time, bearing in mind the speed of the train, would not have materially affected the time when the front of the train reached the crossing. Our view is, the point of impact being 147 feet from the front of the train, that the brakes would have had to have been applied long before that, for the train to slow down enough for the truck to clear the crossing. And we cannot fix that point, because there is no evidence of deceleration after the train's brakes became effective.

Our view, after a careful reading of the record of this unfortunate accident, and of the decisions cited by both appellants and appellee, is that there is no evidence of discovered peril, but on the contrary, the evidence affirmatively shows that the doctrine of discovered peril does not and could not apply to the factual situation here before us.

Both appellants and appellee have filed very able briefs and discussed at length the leading cases in Texas applying the rule of discovered peril, the latest expression by our Supreme Court being the Ford case, supra, and Missouri-Kansas-Texas Ry. Co. v. McFerrin, 156 Tex. 69, 291 S.W.2d 931. But notwithstanding the able oral argument and brief of appellants, we are of the view that they have failed to carry their burden, and by reason thereof, the trial court did not err in disregarding certain answers of the jury to the issues set out in the judgment, and consequently did not err in granting appellee's motion for judgment non obstante veredicto.

Accordingly, the judgment of the trial court is affirmed.