FLORA RIVERA, Plaintiff and Appellant, v. CRISTINO RODRÍGUEZ, in the name and representation of the disabled veteran, FERNANDO DÍAZ, Defendant and Appellee.

No. R-65-47.        Decided January 20, 1966.

---

*Mario A. Rodríguez* for appellant. *Elías González Mathews* for appellee.

Second Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Santana Becerra, Mr. Justice Blanco Lugo, and Mr. Justice Ramírez Bages.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

The marriage contracted on June 28, 1918, by Fernando Díaz and Flora Rivera was dissolved by virtue of a divorce decree rendered by a competent court on April 23, 1963. Díaz served in the Armed Forces of the United States and upon being discharged, after rendering services while he was married, he was awarded a disability pension which he enjoyed for several years.[1] It is accepted that with moneys from the "pension"[2] he purchased federal bonds in the amount

---

[1] For a brief history of the federal legislation related to disability pensions, see 38 U.S.C. pp. 5–26.

[2] In the stipulation subscribed by the parties for the purposes of submitting the controversy it was not specified whether it was a question

of about $6,800.[2a] Moreover, he had a bank balance in the current account which his guardian kept in the Banco Popular of Puerto Rico and he had advanced a certain amount to reserve a lot in Lomas Verdes Development in Bayamón. In rendering judgment in the action brought to liquidate the conjugal partnership the trial court stated that "[t]he proceeds of pensions received are the separate property of the defendant, as well as the property he acquired with said proceeds," on the ground that pensions partake of the nature of a donation being an act of grace granted by the state.

We decided to review the judgment rendered.

■ Contrary to what happens in other areas, *Wissner* v. *Wissner*, 338 U.S. 655 (1950), the federal regulations are silent about the community or separate nature of a pension or compensation granted a veteran who is domiciled in a state where the community property law is in force. 38 C.F.R. 3.1 *et seq*. We must resort, then, to the local legislation to determine the community or separate character, *Buchser* v. *Buchser*, 231 U.S. 157 (1913).

Already since 1255 in the *Fuero Real*[3] a solution was proposed which depended on whether the service rendered the

---

of a pension—periodic payment because of age, years of service or non-service-connected disability—or of a compensation—periodic payment because of service-connected disability. 38 C.F.R. 3.3 and 3.4.

[2a] As to the right to the proceeds of federal bonds registered in the name of only one of the spouses purchased with community funds, see *Yiatchos* v. *Yiatchos*, 376 U.S. 306 (1964) and *Free* v. *Bland*, 369 U.S. 663 (1962); 31 C.F.R. § 315.55; *cf. Barrios* v. *Heirs of Manzano*, 79 P.R.R. 895 (1957).

[3] Law 2, Title 3, Book 3, subsequently incorporated in the *Nueva Recopilación* of 1567 as Law 3, Title 9 of Book 5, and in the *Novísima Recopilación* as Law 2, Title 4, of Book 10. It said, taken from De Funiak, Principles of Community Property, vol. 2, p. 13:

"If the husband should gain anything by inheritance from father or mother, or other near relative, or by gift from lord, relation or friend, or in the army of the King, or of another in his (i.e., the King's) pay, let him have everything he may gain for himself; and if· he be in the

king was with or without pay. It was reasoned that if the service was without pay the husband's expenses were paid by the community and the pension was intended to replace the community funds thus spent; if, on the other hand, the services were paid for, it was presumed that it covered his expenses, and therefore, the pension was his separate property. *Symposium: Community Property*, 25 La. L. Rev. 77, 138 (1964). It was also adduced that when he did not receive pay, the community was being deprived of his services and the pension constituted a compensation for it, *Howard* v. *Ingle*, 180 So. 248, 253 (La. 1938); if he received pay, his services were not for the furtherance of the marital partnership, but of his King and country, and the pay was given him the better to insure these services to the king. 1 De Funiak, Principles of Community Property 194, § 75; 22 Scaevola, *Código Civil* 130, 194–199 (1905).

■ With the advent of the popular democracies and the disappearance of the monarchic regimes, the juridical ground of the pension is not a gratuity from the sovereign, but a moral obligation of the state. The character of donation of the pension is therefore rejected.[4] *Cf. United States* v. *Realty Co.*, 163 U.S. 427, 441 (1896).

The problem was recently raised in Louisiana, a state where the economic regime of community property prevails. The estate left by the decedent—a disabled veteran—com-

---

army without pay, at the expense of himself and his wife, whatever he may earn, in this way, be it all the husband's and wife's; for even as the cost is common to both, let what they may earn in that way be common to both. What above is said of the earnings of husbands, let the same be as regards those of wives."

[4] It is true that the classification as a donation has been retained in some judicial decisions, but it has been so for the sole purpose of fixing the responsibility of the government, that is, to consecrate its revocable character. *Lynch* v. *United States*, 292 U.S. 571 (1934); *United States* v. *Teller*, 107 U.S. 64 (1883); *Turner* v. *United States*, 237 F.2d 700 (8th Cir. 1956); *Morgan* v. *United States*, 115 F.2d 427 (5th Cir. 1940). See, nevertheless, *Johnson* v. *Johnson*, 23 S.W. 1022 (Texas 1893).

prised exclusively United States bonds and cash accumulated from pension payments received from the Federal Government because of a disability he sustained during his marriage. The court said in *Succession of Scott*, 91 So.2d 574, 577 (1956):

"We are of the opinion that the disability payments made to the decedent in this cause, . . . are not to be considered as purely gratuitous and that, therefore, they constituted assets of the community that formerly existed between him and his wife. A casual reading of the statute will reveal that its purpose was the establishment of natural and social justice, and that the benefits provided for therein were and are in recognition of an equitable obligation on the part of the United States Government to aid in the support of disabled veterans or their dependents—a debt owed by the nation as a whole to those persons who lost all or a part of *their earning capacities* in an effort resulting in the common good of all."[5] (Italics ours.)

In *French* v. *French*, 112 P.2d 235 (Cal. 1941), 134 A.L.R. 366, it was held that the regular monthly payments received by a member of the navy for services rendered while he was married constitute community property subject to division upon marriage dissolution by divorce. When the services have been rendered prior to marriage, an opposite solution is imperative, *Succession of Lewis*, 189 So. 118 (La. 1939); *Moore* v. *Moore*, 192 S.W.2d 929 (Texas 1946). More recently, in *Benson* v. *City of Los Angeles*, 384 P.2d 649 (Cal. 1963), it was said that pension rights of a municipal employee are an integral part of his earnings for being an element of his contractual compensation, being community property if the employee is married while rendering the services. With regard to the community character of the allowances received by the wife as a dependent of a

---

[5] In *United States* v. *Brown*, 110 F.Supp. 370 (D.S. Cal. 1952), a different result was reached. Nevertheless, the opinion does not adduce the grounds for its conclusion and limits itself to make reference to a provision of the state's Civil Code.

member of the armed forces, see, *Sterret* v. *Sterret*, 228 S.W.2d 341 (Texas 1950), and *Hokenson* v. *Hokenson*, 162 P.2d 592 (Wash. 1945). See, also, *Retirement Benefits as Community Property in Divorce Cases*, 15 Baylor L. Rev. 284 (1963); *Applicability of Community Property Laws to National Service Life Insurance*, 47 Calif. L. Rev. 374 (1959); *Pension Funds and Problems under California Community Property Laws*, 2 Stan. L. Rev. 447 (1950); Annotations in 23 So. Cal. L. Rev. 607 (1950) and 15 So. Cal. L. Rev. 226 (1942).

█ From all that has been set forth it is deduced that the regular payments received by a veteran because of a disability he sustained during his marriage constitute assets of the conjugal partnership.[6] In effect they substitute the income which could have been perceived if the disability had not occurred. Therefore, the trial court erred in upholding that the property acquired with money from the accumulation of defendant's pension payments was separate property.

The judgment rendered by the Superior Court, Bayamón Part, on February 16, 1965, will be reversed and the case remanded for further proceedings not inconsistent with this opinion.

---

[6] The right to a pension mentioned in § 1303 of the Civil Code, 31 L.P.R.A. § 3643, refers to the pension in its civil aspect, like life annuities, alimony, pensions for life, and to the legacy of pensions, but not to the pension in its administrative aspect, which is assigned to a person for his merits or services rendered. See, *Diccionario de Derecho Privado*, Vol. 1, pp. 2951–2953; Scaevola, *op. cit.*, p. 202; 9 Manresa, *Comentarios al Código Civil Español* 520–525 (1950 ed.).