**John PERRY et al., Appellants,**

v.

**Robert C. WAGNER, Appellee.**

**No. 15394.**

Court of Civil Appeals of Texas.

Houston (1st Dist.).

Jan. 9, 1969.

Rehearing Denied Jan. 30, 1969.

Eddington, Kroll, Friloux & Smith, Gordon J. Kroll, Hellmut A. Erwing, Houston, of counsel, for appellants.

Talbert, Giessel, Barnett & Stone, Alice Giessel, Houston, of counsel, for appellee.

BELL, Chief Justice.

John Perry and his wife sued appellee to recover damages for personal injuries allegedly suffered by Mrs. Perry in an automobile collision occurring on June 1, 1964. The jury found that appellee's negligence was the proximate cause of the collision. However, the jury found Mrs. Perry suffered no injury in the collision. The court rendered judgment that appellants take nothing.

The sole question before us is whether the jury's answer to Special Issue No. 6 finding no injury is so contrary to the

overwhelming weight and preponderance of the evidence as to be clearly wrong and manifestly unjust.

Mrs. Perry's automobile was stopped on Texas Avenue near its intersection with Smith Street in the City of Houston. She had stopped her car behind two other cars that had stopped in obedience to a red signal. There was one car behind her. It was a Corvette. Appellee's car, a Thunderbird, bumped this car and knocked it into the rear of Mrs. Perry's car. The accident happened at about 8 A.M.

Mrs. Perry testified she was 36 years of age. She was pregnant with her third child. The anticipated date of delivery was June 8. After the collision Mr. Perry took her to his mother's home. He was about two blocks away from the scene. He was at his work at the Police Station where he worked as a warrant officer for the Corporation Courts of the City of Houston. She said she was hurting in her back just after the accident but was not hurting before the collision. After staying at her mother-in-law's home awhile she contacted Dr. McCarver, her family doctor. Her back continued to hurt. She visited her doctor three or four times prior to June 29. On the latter date the child was delivered. It was entirely normal. She remained in the hospital until August 4 or 5. While there she was given therapy consisting of hot packs and a heat lamp being applied to her back. She was also given medication contained in tablets and capsules. This was for pain. She had had no back pains in connection with her previous two pregnancies. This was the first time she had ever had a serious backache. She finally went back to work but because of her back she was unable to continue. She was re-hospitalized April, 1965 and remained until May 18. She was given heat treatments and exercised on a "cycle". She still has backache.

On cross-examination she stated she did not remember whether she told anyone at the scene of the accident that she was hurt.

In her deposition she had stated she did not tell anyone she was hurt. She did not recall whether any repairs were made on her car. In her deposition she stated the real difficulty came after her child was born. At trial she denied the real difficulty began after the child was born.

We are unable to find in Mrs. Perry's testimony any description of the severity of the collision nor are we able to find any description of how she was hurt. She nowhere testifies about being jolted or knocked about or against anything.

Mr. Wagner testified his automobile was going about five miles per hour when it hit the rear of the Corvette. Neither he nor his wife was injured. He talked to Mrs. Perry after the accident. She told him she was a little nervous and upset. She explained she was concerned over her stomach hitting the steering wheel and over her young son who was with her. She didn't say her back hurt. After the accident he inspected his car and that of appellants. The center of the grill on his car that extends over the bumper "had been mashed in, dented." There was no visible damage to Mrs. Perry's car. No one called the police.

Dr. McCarver had been Mrs. Perry's family doctor since 1962. In February, 1964 she saw him about her pregnancy. He followed her case from then on. She came to see him after the accident of June 1. "She had a complaint of back pain and I think that her primary concern was whether or not she had any problem with the pregnancy." He examined her and she had spasm of the lumbar muscle and pain on raising the left leg. He stated this type of spasm might be found in a pregnant woman who was near time for delivery though she had been in no accident. He could not definitely say it was not due to pregnancy but she had not previously complained of backaches. He gave her no medication. He saw her again June 5. She complained of backache. He did nothing, but probably reassured her. It would be

difficult to evaluate her back until her pregnancy was over. It is not unusual for a woman this far along in pregnancy to complain of pain and backache. Finally he said he attributed the back injury to the accident. She was in the hospital in August. He called Dr. Cain, an orthopedic specialist. The hospital records showed a diagnosis of back strain. He also called in Dr. McGuire, a neurosurgeon. She was hospitalized again from time to time for back pain. She has chronic back strain.

On cross-examination it developed that in February, 1964, long before the accident, she had come to him complaining of pain in the neck, head, left arm, in left hip and tension type headaches. The doctor's records showed five visits between June 1 and August 5 and there was no reference to back complaints. On April 23, 1965, the doctor's records noted the impression "hysteria". Hysteria means an emotional ill. The major complaints of backache were after the child was born. Delivery of a child certainly may put great strain on the low back. It is not unusual to expect back complaints following delivery but often they clear. A simple back strain would usually clear in about six weeks. The failure in this case of the back to clear caused him to feel there were other complicating factors. A myelogram was taken and a disc injury was ruled out. Various x-rays ruled out any fracture, dislocation or subluxation of the vertebrae. Complications from child-birth and pregnancy had not been ruled out. The emotional and hysterical factor cannot be ruled out. Her complaints were on a non-organic basis. They were subjective. His diagnosis was chronic lumbar strain caused by the automobile collision.

Dr. Cameron, an orthopedic specialist, examined Mrs. Perry October 30, 1964. He took a history from her and took x-rays. He stated he believed the backache was more postural than anything else because she had a marked increase "in the lumbar lordosis." He thought the pain more post pregnancy, increased lumbar lordosis, and the fact that she was a little older than usual to have a third child. He believed the "injury" was a back sprain. X-rays showed minimal narrowing at the lumbosacral joint and also showed arthritis.

Dr. McGuire, a neurosurgeon, examined Mrs. Perry on August 3, 1964, at Bellaire General Hospital. He reviewed the hospital charts. He examined her. He took a history from her. She told him she had some back pain before the accident but it became worse after the accident. She stated she was thrown against the steering wheel and her head apparently struck the dash. He thought she had a sprained back. He felt nervous tension was a part of it. His notes stated "This lady's symptoms appear exaggerated out of proportion." He said her symptoms were secondary to nervous tension.

Dr. Cain, an orthopedic surgeon, examined Mrs. Perry in the summer of 1964. He ran a myelogram July 1. It was negative. He was unable to explain her symptoms on a basis of clinical findings. He ran a second myelogram in April, 1965. It was normal. He thought she had a back strain. He thought a lot of her problem was nerves.

█ We are of the view that there was ample evidence to support the jury's finding of no injury and that such finding was not contrary to the overwhelming weight and preponderance of the evidence.

While the doctors gave the opinion that Mrs. Perry suffered a back strain, we think their expression of opinion can be characterized as somewhat guarded. The opinions were not based on clinical findings. Other than the muscle findings of Dr. McCarver, the other doctors' opinions were based on subjective complaints of Mrs. Perry. The muscle spasms noted by Dr. McCarver were compatible with Mrs. Perry's condition at the time. The accident was very minor.

█ A jury is not bound to accept the opinion of doctors or other experts. Hood

v. Texas Indemnity Ins. Co., 146 Tex. 522, 209 S.W.2d 345; Fry v. Dixie Motor Coach Corp., 142 Tex. 589, 180 S.W.2d 135; Muro v. Houston Fire & Casualty Ins. Co., 329 S.W.2d 326 (Tex.Civ.App.), n. r. e.

Factually and on principle we feel this case is controlled by, and our holding is supported by, Whitlock Oil & Gas Co., Inc. v. Brooks, 396 S.W.2d 922 (Tex.Civ.App.), n. w. h.; Texas & N. O. R. Co. v. Wilkerson, 260 S.W.2d 912 (Tex.Civ.App.), n. w. h.; Hoffman v. French, Ltd., 394 S.W.2d 259 (Tex.Civ.App.), n. r. e.; Marks v. Saul, 326 S.W.2d 24 (Tex.Civ.App.), n. r. e.; and Heckathorn v. Tate, 355 S.W.2d 845 (Tex.Civ.App.), n. w. h.

Affirmed.