## DIXIE MOTOR COACH CORPORATION v. FRY.

### No. 13446.

Court of Civil Appeals of Texas. Dallas.

Jan. 7, 1944.

Rehearing Denied Feb. 11, 1944.

W. H. Barnes, of Terrell, for appellant.

Helen M. Viglini, of Dallas, for appellee.

YOUNG, Justice.

Appellee's suit was for personal injuries alleged to have been sustained while a passenger of defendant, en route from Dallas to Neyland Junction, a stop some eight miles beyond Greenville, Hunt County. Upon trial, the jury assessed damages at $500. Defendant's motion for instructed verdict at close of testimony, and non obstante veredicto thereafter, were each

overruled, and appeal has been perfected from a judgment in the amount stated.

Plaintiff, a colored woman, thirty-five years of age, on the afternoon of February 13, 1942, had boarded defendant's 3:30 bus at the Dallas station, turning over ticket to Mr. Sturges, bus driver. After being seated, she was requested by Sturges to get off and take a second bus going out on the same schedule, which she did, leaving luggage in bus No. one, the driver retaining custody of her ticket. Here the testimony conflicts, plaintiff stating that she was instructed to get back on the first bus at Rockwall; Sturges testifying that she was told to remain on the second bus until both cars arrived at Greenville, unless otherwise ordered by him. At Rockwall, as plaintiff testified, she followed instructions and was walking to the forward bus when it pulled out; the bus on which she had been seated doing likewise on her attempt to regain it. She then borrowed 25¢ from an acquaintance (having lost her purse, not attributable to defendant), and had the ticket agent 'phone ahead for her baggage to be set off at Greenville; claiming that she was not afforded station accommodations during a two-hour interval at Rockwall, was required to remain on the outside and exposed to weather conditions. Arriving at Greenville, plaintiff's difficulties continued. According to her, with baggage repossessed, she was informed by defendant's agent that earliest bus stopping at Neyland Junction was the next morning; this, the agent denied, stating she was told of a bus leaving within about an hour. It was plaintiff's narrative that, having no money for overnight lodging, she went across town, found a party who took her to destination for one dollar on credit; testifying to a head cold, sinus and bronchial affection beginning at Rockwall, which has persisted along with medical treatment and expense.

Jury answers were, in substance, that (1) driver Sturges had told plaintiff to transfer at Rockwall and that she was not permitted to do so, which act and omission constituted negligence and a proximate cause of her injuries; (2) that defendant had failed to furnish plaintiff a comfortable place to stay in the Rockwall station, same also being negligence and a proximate cause; (3) driver Sturges did not tell plaintiff at Dallas that he would advise her if she was to transfer back to his bus at Rockwall, otherwise she was to go on to Greenville on the bus in which she left Dallas; (4)

driver Warren, when he arrived at Rockwall and before any passengers had gotten off his bus, did not announce in an audible voice to the passengers on such bus that it would go on into Greenville; (5) that $350 was reasonable compensation for injuries sustained at Rockwall on the occasion; for past and future doctor's bills, $150.

Appellant contends that the overruling of its motion for defendant's verdict was error, because (1) the record under which plaintiff claims to have sustained injuries at Rockwall was against the physical facts, contrary to universal observation, reason and experience, and opposed to the great preponderance of testimony; (2) from undisputed evidence, if plaintiff received injuries at Rockwall, same were due to her own negligence and failure to exercise ordinary care for personal safety, convenience and comfort; (3) plaintiff's pleading and evidence show that she was a married woman on accrual of cause of action, and was not joined therein by her husband. In disposing of these points, evidence most favorable to appellee will be considered and discussed.

It was plaintiff's version that after being left at Rockwall, she went into the bus stop (a local drug store) and asked the proprietor for a drink of water and rest-room facilities, and was refused each; also for a place to sit down, and was told there was no place inside for colored people; that it was a cold day (although she was wearing a fur coat). Plaintiff then went out and into a tailor shop some doors away, where it was warm, but was told by an employe that he was working for white people who might not like colored folks to stand around in there; so she got out, remaining on the outside until her 6:50 bus passage to Greenville; that she began to get cold and chilly, head and ears stopping up, throat hoarse and dry, such condition worsening for rest of trip, with acute condition upon arrival at home, where she suffered a prolonged illness, going to Greenville for medical treatment the next day. Plaintiff testified that the Greenville bus was comfortable, the station there being warm with inside conveniences, she nevertheless going on the street and securing another means of conveyance, as already stated.

Dr. Watts, of Dallas, plaintiff's sole medical witness and on whom she relied to connect her condition of ill health with the prior exposure to February weather at Rockwall, told of having first treated her

at his office the latter part of April; and that she had been suffering from severe sinusitis, deep-seated laryngitis and bronchial irritation, hoarseness and difficulty in breathing. Predicated on plaintiff's history of her illness, the following hypothetical question was propounded to him, and answer made: "Q. I will ask you, Dr. Watts, this question: If a person, on a cold February day, took a bus in Dallas and rode to Rockwall and was put off at Rockwall and under certain circumstances had to stand outside the building in the cold, on a February day, for several hours, her ears feeling like they were full of air, and then went on to Greenville and was exposed there again, and then went on to Neyland Junction and was very ill with her throat and her sinuses and her lungs, and continued to be ill until April, when you saw her, in your opinion * * * based on your experience and your examination of the patient * * * would her condition at that time, or could it be reasonably supposed that her condition at that time was the result of that exposure? * * * A. As I have before stated, the principal causes of pulmonary lung, or the primary condition of a sinus infection or laryngitis is generally the result of irritation. The irritation is generally caused from exposure, as during the wintertime, *like this cold snap,* when we do have more throat trouble, more sinus trouble, more bronchial trouble and more pulmonary trouble than we have at any other time in the year. An exposure of that sort would, in my opinion, create the conditions that I found." (Emphasis ours); further testifying that plaintiff's ailment was to a degree permanent. (The "cold snap" just mentioned was with reference to date of trial (January, 1943) when outside temperature was estimated by witness as below 40 deg.) Dr. Watts stated upon cross examination that the condition complained of by plaintiff would not develop except through continued exposure to weather of 50 degrees or lower. After fixing 70 deg. as normal temperature, his particular testimony is quoted: "Q. A person is not going to contract sinus trouble in a normal temperature is he? A. No, sir. * * * It would have to be below fifty. Long exposure to that and below that."

On the afternoon of February 13, U. S. Weather Bureau report for Dallas and 25-mile radius was: 3:30 p.m., 63 deg.; 4:30, 63 deg.; 5:30, 61 deg.; 6:30, 59 deg.; no precipitation; with S.E. wind ranging from 13 to 17 miles per hour. Here we may take judicial notice of the fact that Rockwall lies some 26 miles to the east and north of Dallas. Plaintiff's description of the occasion in question as a "cold February day" must yield to above actual temperature reading of the U. S. Weather Bureau, 32 C.J.S., Evidence, § 572, pp. 423–427; Kuntz v. City of Pittsburgh, 123 Pa.Super. 394, 187 A. 287; Kress & Co. v. Sharp, 156 Miss. 693, 126 So. 650, 68 A.L.R. 167; especially so, in view of defensive testimony uncontradictedly showing that Dallas and Rockwall weather for the afternoon was substantially the same. And in this connection, it is obvious from the testimony of Dr. Watts that (1) same was predicated upon weather conditions existing on date of trial, and (2) as a whole, it disclosed facts to the positive effect that weather such as prevailed on the day of plaintiff's exposure could not have brought about the sinus trouble of which she complained. "* * * a mere opinion or conclusion of a witness which is contrary to and irreconcilably opposed to the clear and undisputed facts on which it is founded raises no conflict with the stated facts." 32 C.J.S., Evidence, § 572, p. 426; Waizman v. Black, 101 Cal.App. 610, 281 P. 1087. It will be noted that the jury's affirmative answer to Issue 6 limits plaintiff's claim for damages to defendant's failure to furnish her a comfortable place *inside* the Rockwall bus station. Likewise, plaintiff's testimony excludes as an element of damage, defendant's failure to furnish her a station seat, toilet facilities, or drinking water, claiming in effect that all suffering and injuries were brought on by exposure to *outside* weather while awaiting the later bus. Appellee's counsel contends that her narrative of weather conditions and exposure thereto sufficiently raised an issue of resulting damage and defendant's negligence; pointing out that, indicative of a cold day, the drug store was fire-heated, though such positive fact is not shown by the record. Be that as it may, we cannot close our eyes to the record as a whole and to the actual temperature on the day in question, as established from a disinterested source. We conclude that plaintiff, comfortably dressed and presumably in good health at the beginning of her afternoon trip, simply could not have sustained the injuries at Rockwall, testified to by her, under weather conditions such as prevailed on that occasion. A jury finding of damages in the situation thus presented,

995

we believe to be out of harmony with universal observation, reason, and common experience, and must be disregarded. San Antonio Public Service Co. v. Fraser, Tex. Civ.App., 70 S.W.2d 232; Texas & N. O. R. Co. v. Wagner, Tex.Civ.App., 224 S.W. 377. The power of appellate courts to disturb jury verdicts is a responsible one and of infrequent exercise. In the instant case, however, appellee's medical testimony is shown to be of no probative force in establishing any causal connection between appellant's negligence and her described injuries; and where, under all the circumstances and uncontroverted physical facts, plaintiff's theory of causation cannot be supported on any reasonable hypothesis, we are unwilling to permit a verdict based upon the particular testimony to stand. San Antonio & A. P. R. Co. v. Biggs, Tex. Civ.App., 283 S.W. 627.

It follows, as a matter of law, that the damage proved by way of illness was not a proximate result of any negligence referable to defendant; and "This fact of causal connection between an alleged negligent act or omission and an injury can no more be presumed than can the act or omission itself." Texas & P. R. Co. v. Shoemaker, 98 Tex. 451, 84 S.W. 1049, 1052. Appellant's first point is therefore sustained, requiring a reversal and rendition of the judgment appealed from. If we be mistaken in the ruling just made, making necessary a review of appellant's second and third points of error, then and in such event, these points, after due study, must be considered as overruled.

Reversed and rendered.