Harry Douglas LEWIS, Appellant,

v.

The STATE of Texas, Appellee.

No. 05–83–00115–CR.

Court of Appeals of Texas, Dallas.

June 7, 1984.

Rehearing Denied July 2, 1984.

---

S. Michael McColloch, Dallas, for appellant.

Henry Wade, Dist. Atty., Jeffrey Keck, Asst. Dist. Atty., Dallas, for appellee.

Before STOREY, WHITHAM and ROWE, JJ.

STOREY, Justice.

This is an appeal from a conviction of burglary of a habitation with intent to commit rape. Appellant contends that (1) it was error to admit testimony regarding two extraneous offenses, (2) the trial court erred in not granting a continuance, and (3) the prosecutor made improper jury argument. We disagree and, thus, affirm.

Initially, appellant complains of the admission of two witnesses' testimony concerning extraneous offenses. Appellant concedes that evidence of extraneous offenses became admissible when appellant's identity was put in issue by his alibi defense. *Jones v. State*, 587 S.W.2d 115, 119 (Tex.Crim.App.1979); *Albrecht v. State*, 486 S.W.2d 97, 100–01 (Tex.Crim.App.1972). He argues, however, that the two extraneous offenses are so remote and dissimilar from the offense in this case that any probative value is greatly outweighed by their prejudicial effect, thus rendering them inadmissible. *Ransom v. State*, 503 S.W.2d 810, 812 (Tex.Crim.App.1974).

Upon appeal, our review of the admissibility of extraneous offenses must be *de novo* —that is, we must make an independent examination of the testimony rather than determine if the trial court's conclusion is supported by the record. *Carpenter v. State*, 596 S.W.2d 115, 120 (Tex.Crim.App.1980). An extraneous offense is admissible to prove identity if there is some distinguishing characteristic common to both the extraneous offense and the offense for which the accused is on trial. *Ford v. State*, 484 S.W.2d 727, 729 (Tex.Crim.App.1972). "The common distinguishing characteristic may be the proximity in time and place of the extraneous offense to the offense for which the accused is being tried. Or, the common element may be the mode of commission of the crimes, or the mode of dress of the perpetrator, or any other element which marks both crimes as having been committed by the same person." *Ford*, 484 S.W.2d at 729–30. When the accused is clearly identified and shown to be the perpetrator of the extraneous offense, however, the mere fact that certain dissimilarities are present does not make the extraneous offense inadmissible. *Ransom*, 503 S.W.2d at 813. With these standards of review before us, we turn to the facts of the primary offense and to those of the two extraneous offenses.

## Primary Offense—K.B.

K.B., the complainant, testified that she lived in a house with her brother in Northwest Dallas. At about 3:30 to 4:00 a.m., on May 31, 1982, Memorial Day, she was at home alone. She was awakened by the sound of her glass backdoor being broken. K.B. locked her bedroom door, but appellant broke down the door and entered her bedroom, attempting to conceal his identity by pulling his T-shirt over part of his face. His arm had been badly cut when he broke the glass door. He was carrying a revolver. Appellant ordered K.B. to remove her nightgown. He then ordered her into another part of the house. He forced her to her knees and forced her to perform oral sodomy on him. He then took K.B. out the back door, through the backyard, into an alley, and down the alley into the next block. At that point he again forced K.B. to perform oral sodomy on him and then raped her. Appellant then sat down and started talking to K.B., saying that he wished she had a gun so that when he broke into her home she could have shot him. He then told her to walk back to her house slowly. When she reached her back gate, she turned around to find appellant was gone. K.B. positively identified appellant as her assailant.

## Extraneous Offense—P.H.

In rebuttal, the State called P.H. who testified that she lived in a house with her sister in Northwest Dallas. (The testimony revealed that appellant's brother also lived on this block of this street.) At about 11:45 p.m., on May 25, 1980, the day before Memorial Day, she was at home alone. She was in her bathroom when she heard her backdoor open. She shut the bathroom door, but appellant forced the door open and entered the bathroom. Appellant attempted to conceal his identity by covering his face with his sweatshirt. He then

forced P.H. to undress, made her perform oral sodomy on him, and attempted sexual intercourse with her. He then bound her arms, took her through her backyard, into the alley, and down the alley a distance of about three or four houses. He made her again perform oral sodomy on him and then raped her. Appellant then told P.H. to go home and take a bath. P.H. positively identified appellant as her assailant.

## Extraneous Offense—L.B.

The State also called L.B. as a rebuttal witness. She testified that she lived in a house with her common-law husband in North Dallas. On April 16, 1981, she was at home alone. At about 10:00 p.m., she fell asleep watching television but was awakened when appellant grabbed her and held a revolver to her head. He attempted to conceal his identity with a ski mask, but the mask was pushed off during a struggle. Appellant took L.B. to the living room where he made her open the drapes. He then forced her to her knees and forced her to commit oral sodomy on him in front of the open window. He then pushed her to the floor and told her to remove her nightgown and cover her face with it. L.B. complied and appellant raped her. He then told her to go take a shower. When she came out of the shower, appellant had left. L.B. positively identified appellant as her assailant.

In considering the P.H. extraneous offense, we take judicial notice that the offense was committed within several blocks of the primary offense.[1] Both offenses occurred during the nighttime hours before Memorial Day. In each case, the victim lived in a house with someone else but was at home alone at the time of the offense. The appellant entered each house through the rear and attempted to conceal his identity during both offenses by cover-

1. We may take judicial notice of facts which are notorious, well known or easily ascertainable. *Eagle Trucking Company v. Texas Bitulithic Company,* 612 S.W.2d 503, 506 (Tex.1981); *Ex parte Britton,* 382 S.W.2d 264, 265 (Tex.Crim. App.1964). This includes distances between two geographical locations. *Campbell v. Campbell,* 477 S.W.2d 376, 378 n. 2 (Tex.Civ.App.—Amarillo 1972, no writ); *Dixie Motor Coach Corp. v. Fry,* 177 S.W.2d 992, 994 (Tex.Civ.App.—Dallas), *rev'd on other grounds,* 142 Tex. 589, 180 S.W.2d 135 (1944).

ing his face with a T-shirt or sweatshirt. Each victim was first forced to commit oral sodomy in the house and was then taken out through the backyard, into an alley, and some distance down the alley. Each was again forced to commit oral sodomy before being raped. Finally, they were both instructed to return home and appellant did not follow. We find sufficient similarities to render this extraneous offense admissible.

The L.B. offense was also committed in the same area of the city as the instant offense—within about one mile.[2] L.B. also lived in a house with someone else but was alone at the time of the offense. The appellant used a revolver in both offenses. As in the primary offense, appellant attempted to conceal his identity—first by covering his face with a ski mask and then by ordering L.B. to remove her nightgown and cover her face with it. Appellant forced each of the victims to commit oral sodomy before he raped them. In each case, appellant made his escape by telling the victim to go somewhere else and then leaving while she was not looking. We find sufficient similarities to also make this extraneous offense admissible.

■ In addition to contending that the extraneous offenses do not possess sufficient similarities, appellant also argues that the offenses are too remote. The State contends that appellant failed to raise the remoteness issue at trial because he did not specifically object on this ground. We do not find the authorities cited by the State to be controlling as those cases involved admitting prior convictions for impeachment purposes. *See Horn v. State*, 491 S.W.2d 170 (Tex.Crim.App.1973); *Brem v. State*, 432 S.W.2d 916 (Tex.Crim.App.1968). Remoteness is simply one factor to be considered in determining the admissibility of an extraneous offense. *Ford*, 484 S.W.2d at 729–30. Appellant was not required to specifically object on the ground of remoteness and, therefore, his objection was sufficient to preserve the matter for review on

appeal. *Buckner v. State*, 571 S.W.2d 519, 524–25 (Tex.Crim.App.1978).

■ We conclude, however, that the offenses are not so remote as to render them inadmissible. As we have stated, proximity in time is but one factor to be considered in determining the admissibility of extraneous offenses. The testimony in this case provides other similarities which we hold sufficient. Furthermore, the presence of an intervening similar offense works to ameliorate an otherwise too-remote offense. *See Bachhoffer v. State*, 633 S.W.2d 869, 872 (Tex.Crim.App.1982) (four years with no intervening offense held too remote); *McDonald v. State*, 513 S.W.2d 44, 52 (Tex.Crim.App.1974) (one year with intervening offense held not too remote).

■ Appellant next complains of the trial court's denial of his oral motion for continuance. He argues that he was surprised by the testimony of P.H. and L.B. because he had no notice that they were going to testify at trial. When an appellant claims surprise, a motion for continuance is addressed to the sound discretion of the court. *Hightower v. State*, 629 S.W.2d 920, 926 (Tex.Crim.App.1981); TEX.CODE CRIM.PROC.ANN. art. 29.13 (Vernon Pamp.Supp.1984). We note that the State did not offer this testimony in its case-in-chief, but in rebuttal to a defensive issue raised by appellant. "In such a situation the defendant, rather than the State, determines whether a contested issue will be raised, and his determination will not be made known until he presents his case." *Gipson v. State*, 619 S.W.2d 169, 170–71 (Tex.Crim.App.1981). Appellant's motion was neither in writing nor was it sworn to. Therefore, it did not comply with TEX. CODE CRIM.PROC.ANN. arts. 29.03, 29.-08 (Vernon Pamp.Supp.1984). *Porter v. State*, 623 S.W.2d 374, 381 (Tex.Crim.App. 1981). Under these circumstances, we find no abuse of discretion in denying the motion for continuance. *Hightower*, 629 S.W.2d at 926.

**2.** *See note 1, supra.*

Finally, appellant complains of two instances of improper jury argument by the prosecutor. In the first instance, appellant failed to secure a ruling on his objection and, thus, preserved nothing for review. *Todd v. State*, 598 S.W.2d 286, 296 (Tex.Crim.App.1980). In the second instance, the prosecutor made the following argument:

> Now, I'm not going to beat a dead horse standing up here, you also know that her [the complainant's] testimony is corroborated by P.H. and by L.B. No doubt about it, I mean, these aren't people we made up, these aren't actresses, there are really just women that were living here in Dallas trying to earn a decent living and who happened to fall victim to him over here. When he gets a little time on his hands he doesn't know what to do with himself and he goes out and rapes somebody, on Memorial Day, twice. Then on April 16th, the other time. So that corroborates K.B.'s testimony, too. The revolver, taking them out in the alley, you know, that business. And they're identifying him, too. They didn't say, I think it's him, it might be him, it resembles him. If they said, that's him. They also passed the eyewitness identification test, too. L.B. picked him out of a six-picture lineup. P.H. picked him out of a six-man lineup. Nobody missed him once. Now, you-all set the policy here and you tell us what you want. You know, three people came down to the D.A.'s Office, the police catch the guy and they say, here he is, this is the guy that rapes—

> MR. ROBERTSON: Judge—

> MR. ANDERSON: —what do you want us to do?

> MR. ROBERTSON: —I'm going to object to other cases that he's referring to, it's outside the scope of the evidence.

> THE COURT: Overrule the objection.

> MR. ROBERTSON: Note our exception.

Appellant contends that, because the extraneous offenses were admitted for a limited purpose, it was error to allow the prosecutor to suggest to the jury that the offenses are evidence of appellant's guilt. We do not interpret the prosecutor's argument to be a suggestion of guilt. It is clear that the prosecutor was asking the jury to consider the testimony of P.H. and L.B. as evidence of appellant's identity—the purpose for which the offenses were admitted. As such, the argument was a proper summation of the evidence. *Alejandro v. State*, 493 S.W.2d 230, 231 (Tex.Crim.App. 1973).

Affirmed.

WHITHAM, Justice, dissenting.

I respectfully dissent in part and concur in part. I concur in overruling appellant's first ground of error, but for reasons different from that of the majority. I find merit in appellant's second ground of error. Accordingly, I would reverse and remand.

I will address appellant's second ground of error first. In my view, the trial court erred in admitting testimony of the L.B. extraneous offense. Contrary to the majority's holding, I find no sufficient similarity between the offense against complainant and the offense against L.B. To my mind, there are similarities between the offense against complainant and the offense against L.B., "but they are more in the nature of the similarities common to the type of crime itself rather than similarities peculiar to both offenses alone." *Ford v. State*, 484 S.W.2d 727, 730 (Tex.Crim.App. 1972).

Consider the similarities the majority perceives between the offense against the complainant and the offense against L.B. First, the distance of one mile. In my view, a distance of one mile given the highly concentrated urban population of the Dallas areas involved is meaningless. Second, the sharing of a house with someone else, but being alone at the time of the offense. In my view, the rape of a woman alone is common to the type of the crime itself rather than a similarity peculiar to the offenses against complainant and L.B. Third, the rapist's act of concealing his

face. In my view, concealment of the rapist's face is common to this type of crime itself rather than a similarity peculiar to the offenses against complainant and L.B. Moreover, wearing a ski-mask, as in the offense against L.B., is dissimilar from attempting to pull over one's face a T-shirt garment as in the offense against complainant and a sweatshirt garment as two years earlier in the offense against P.H. Fourth, the order to L.B. to remove her nightgown and to cover her face with the nightgown. The majority treats the order to cover L.B.'s face as the rapist's efforts at concealment. L.B. had been taken to her living room, forced to open the living room drapes and forced to commit oral sodomy. All this before L.B. was told to cover her face. I fail to see an effort at concealment of the rapist's identity in such an episode. In any event, complainant was not required to cover her face. Fifth, forcing complainant and L.B. to each commit oral sodomy before being raped. In my view, forced oral sodomy is common to this type of crime itself rather than a similarity peculiar to the offenses against complainant and L.B. Sixth, the effort to escape unobserved by the victim. In my view, unobserved escape is common to this type of crime itself rather than a similarity peculiar to the offenses against complainant and L.B.

Furthermore, there are three distinct dissimilarities between the offense against L.B., on the one hand, and the offenses against complainant and P.H. First, there is the Memorial Day proximity in both the offenses against complainant and P.H. There was no Memorial Day proximity in the offense against L.B. The majority makes much of Memorial Day proximity to justify the P.H. testimony. Second, there are the trips into an alley from the victim's home, sexual violence and subsequent instructions to return home in both the offenses against complainant and P.H. There was no sexual violence in an alley in the offense against L.B. The majority makes much of sexual violence in an alley

to justify the P.H. testimony. In L.B.'s case, however, the entire criminal episode occurred in L.B.'s house. The assailant forced L.B. to open the living room drapes and commit oral sodomy and submit to rape in front of the uncovered window. To my mind, sexual violence in alleys is a distinguishing characteristic from sexual violence in front of uncovered living room windows. Third, there is the attempt by the rapist in both the offenses against complainant and P.H. to cover his face by a garment he was wearing on his upper body. A T-shirt in the offense against complainant. A sweatshirt in the offense against P.H. The rapist in the offense against L.B. did not attempt to cover his face by a garment he was wearing on his upper body.

Evidence of extraneous offenses can only be admitted on the issue of identity where there are distinguishing characteristics common to both offenses such that the accused's acts are earmarked as his handiwork, or figuratively, marked with his "signature." *Collazo v. State*, 623 S.W.2d 647, 648 (Tex.Crim.App.1981). I do not find appellant's "signature" affixed to the offense against L.B. Accordingly, I would hold that there are not sufficient similarities between the offense against complainant and the offense against L.B. If there is no sufficiently distinctive characteristic, then the relevancy of the evidence cannot outweigh its prejudicial potential. *Collazo*, 623 S.W.2d at 648. Therefore, I would hold that the trial court erred in admitting the testimony of L.B. concerning an extraneous offense. Consequently, I would sustain appellant's second ground of error and reverse and remand.

I concur, however, in the majority's holding that the testimony of P.H. concerning an extraneous offense was admissible. In cases such as the present case we are looking for common elements. The common distinguishing characteristic may be the proximity in time and place of the extraneous offense to the offense for which

the accused is being tried. Or, the common element may be the mode of commission of the crimes, or the mode of dress of the perpetrator, or any other element which marks both crimes as having been committed by the same person. *Ford*, 484 S.W.2d at 729–30. Thus, remoteness in time is but one element. In my view, the absence of one element does not operate to the exclusion of other elements. Therefore, I cannot agree that the majority must find an intervening similar offense to ameliorate an otherwise too-remote offense to permit the P.H. evidence. Indeed, it is the majority's efforts to find an intervening similar offense to ameliorate a perceived too-remote offense that leads them to strain to hold that the testimony of L.B. concerning an extraneous offense was admissible. As discussed above, that holding is wrong.

Nevertheless, the majority goes to great lengths, as shown below, to bridge a two year period between the offense against complainant and the offense against P.H. with the offense against L.B. which occurred approximately one year before the offense against complainant and approximately one year after the offense against P.H.

| Complainant | L.B. | P.H. |
|---|---|---|
| Offense | Offense | Offense |
| May 31, 1982 | April 16, 1981 | May 25, 1980 |
| T-shirt garment pulled over face | Ski mask over face | Sweatshirt garment pulled over face |
| Alley sexual violence | Sexual violence in front of uncovered living room window | Alley sexual violence |
| Victim not required to cover face | Victim required to cover face | Victim not required to cover face |

That the majority needlessly emphasizes proximity in time can be found in its language that "[f]urthermore, the presence of an intervening similar offense works to ameliorate an otherwise too-remote offense." In my view, ample common elements outside the concept of proximity in time may be found to permit the P.H. testimony. To my mind, appellant's on or near Memorial Day sexual violence against complainant and P.H. in alleys after forceably removing them from their homes and after attempting to cover his face by a garment he was wearing on his upper body is common element enought and firmly affixed appellant's "signature" to the offenses against complainant and P.H. regardless of proximity in time. I agree, therefore, that the trial court did not err in admitting the testimony of P.H. concerning an extraneous offense. Consequently, I concur in overruling appellant's first ground of error.