**Michael Tony CARO, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 05–88–00081–CR.**

Court of Appeals of Texas,
Dallas.

May 8, 1989.

Joe H. Loving, Jr., Dallas, for appellant.

Patricia Poppoff Noble, Dallas, for appellee.

Before WHITHAM, BAKER and THOMAS, JJ.

THOMAS, Justice.

Michael Tony Caro appeals a jury conviction for unauthorized use of a motor vehicle for which the trial court assessed punishment at twelve years' confinement. In seven points of error, Caro contends that: (1) the indictment fails to properly allege the requisite mental state; (2) the indictment fails to properly describe the automobile; (3) evidence seized during an illegal search was improperly admitted; (4) extraneous offense evidence was improperly admitted; (5) his requested jury charge pertaining to the culpable mental state should have been submitted; (6) the jury should have assessed punishment despite his tardy request; and (7) the evidence is insufficient to support the conviction. We disagree and affirm the trial court's judgment.

## FACTUAL BACKGROUND

On September 21, 1987, Terry Knox was getting gas at a self-service Stop 'N Go convenience store in Duncanville, Texas. She was approached by a man, identified at trial as Michael Tony Caro. In making a description to the police, she described a neatly dressed black man, standing five feet, ten inches tall, weighing 175 to 180 pounds, who was not wearing glasses. Caro asked her the name of a near-by street and then he went inside the convenience store. Knox also went inside to pay for her gasoline, leaving her purse and keys in her unlocked 1986 Mustang automobile, license number 222 NVX. She saw Caro, the only other customer in the store, looking at merchandise. When Knox went outside, her car was gone and so was Caro. While Knox did not see Caro leave the store, she heard someone leave while she was paying the clerk. Knox later recovered her car from the City of Dallas pound and her purse from the manager of a Deluxe Inn.

The following day, Dallas Police Officer Cecil Watson and a partner were on routine patrol in the southwest area of Dallas, approximately one-half mile from Duncanville. As they drove past a Deluxe Inn, Officer Watson, on a "whim" conducted a computerized license plate check on a 1986 Mustang, license number 222 NVX, parked in the motel parking lot. The check indicated that the car had been reported stolen. After the dispatcher confirmed the report with the Duncanville police, two undercover officers set up covert surveillance of the car. A short time later, Caro entered the car and was stopped by the undercover officers as he was backing out. In response to questioning, Caro identified himself as David Lover. Officer Watson had known Caro prior to this arrest and had reason to believe that David Lover was not his true name. Following the arrest, the officer found a wallet which contained a driver's license in the name of David Lover and a toy badge. It was later confirmed that the wallet was stolen.

The State also introduced testimony that on the same day the Mustang was stolen, Caro drove the car to Computer Craft in far North Dallas where he made a purchase and paid for it with a check bearing the same name and address that was found on David Lover's stolen driver's license. As further identification, the manager and salesman noted the car's license number

222 NVX, on the check. Caro told the computer salesman that he was using or borrowing the Mustang while his BMW was being repaired.

Caro took the stand and denied having been at the Stop 'N Go on the morning of September 21, 1987. He claimed that he had a window tinting business and that on the afternoon of the theft, an acquaintance, Stanley Smith, drove the Mustang to the Deluxe Inn and asked him to tint the windows. Caro denied knowing the car was stolen. During cross-examination, Caro admitted that on July 10, 1987, he was convicted of unauthorized use of a motor vehicle and received a four-year sentence. According to Caro, he had returned to Dallas from Huntsville approximately one week before this incident. He also testified that he did not steal the billfold in which David Lover's license was found and that it was already in the car when he received it from Smith. Caro further stated that he had extremely poor vision and wore glasses at all times.

In addition to his own testimony, Caro offered the testimony of Glen Johnson. Johnson testified that he was present on a day when Stanley Smith came by and that he saw Smith give some keys to Caro. The key ring seemed to have both house keys and car keys on it. Johnson did not know whether the car keys were to the Mustang in question.

In rebuttal, the State called Victor Rodriguez who testified that on September 18, 1987, he was shopping at Redbird Mall which is located approximately one mile from the Deluxe Inn. As he was leaving the mall and getting into his car, a man approached and identified himself as a security guard. The man, whom Rodriguez identified as Caro, flashed a badge and asked Rodriguez to return to the mall in order to discuss a shoplifting incident. Caro escorted Rodriguez to the entrance of J.C. Penney's and took Rodriguez's keys, explaining that he needed them to keep Rodriguez from leaving while Caro telephoned his supervisor. When Caro failed to return, Rodriguez went outside to discover that his car was gone. When first describing the "apparent" security guard to police, Rodriguez stated that the man, at five feet, ten inches or six feet tall, was much taller than he was. In a demonstration for the jury, it was revealed that Rodriguez is taller than Caro. Rodriguez also testified that Caro was not wearing glasses. Rodriguez's car was later recovered in Duncanville, parked in a lot approximately eighty feet behind the Stop 'N Go where Terry Knox's car was taken.[1]

### CULPABLE MENTAL STATE

In three points of error, Caro attacks alleged deficiencies in the indictment, the jury charge and the proof as it concerns the culpable mental state. Caro contends that the State was required to indict, charge and prove that he knowingly and intentionally operated a motor vehicle *knowing* that he did not have the consent of the owner. Caro relies upon this Court's opinion in *Gardner v. State*, 736 S.W.2d 179 (Tex.App.—Dallas 1987, pet. granted). In *Gardner*, we held that the evidence in that unauthorized use of a motor vehicle case was insufficient because the State failed to prove that the defendant knew that he was using the vehicle without the owner's consent. *Id.* at 181–82. It has been suggested that *Gardner* improperly adds an element to the State's burden that is not authorized by the statute and is contrary to *Musgrave v. State*, 608 S.W.2d 184 (Tex.Crim.App.1980) (on rehearing). We need not resolve the conflict, if any, because this case is clearly distinguishable from *Gardner*.

### The Indictment

In the first point of error, Caro contends that the trial court erred in denying his motion to quash the indictment for failing to set forth the proper culpable mental state. The relevant portion of the indictment alleges that Caro did "knowingly and

---

1. Caro was convicted for unauthorized use of a motor vehicle in the Rodriguez incident and this Court affirmed that conviction in *Caro v. State,* 761 S.W.2d 488 (Tex.App.—Dallas 1988, pet. ref'd).

intentionally operate a motor-propelled vehicle, namely, an automobile, without the effective consent of TERRY KNOX, the owner thereof." The indictment tracks the language of the statute. Caro argues, in reliance upon *Gardner*, that the indictment is defective because it does not separately set forth a culpable mental state modifying the language "without the effective consent of TERRY KNOX."

An indictment should charge an offense in plain and intelligible words with such certainty as to enable the accused to determine what he will be called upon to defend against and to enable him to plead any judgment in bar of further prosecution for the same offense. *Wilson v. State,* 520 S.W.2d 377, 379 (Tex.Crim.App.1975); *Caro,* 761 S.W.2d at 489. Ordinarily, an indictment is sufficient if it charges an offense in the terms of the statute. *See Reynolds v. State,* 547 S.W.2d 590, 592 (Tex.Crim.App.1976); *Caro,* 761 S.W.2d at 489.

The statute defining the offense of unauthorized use of a vehicle provides: "A person commits an offense if he intentionally or knowingly operates another's boat, airplane, or motor-propelled vehicle without the effective consent of the owner." TEX. PENAL CODE ANN. § 31.07(a) (Vernon 1974). In *Allen v. State,* 549 S.W.2d 5 (Tex.Crim.App.1977), the court of criminal appeals upheld an indictment alleging that the defendant did "intentionally and knowingly operate a motor propelled vehicle owned by A.R. Price, hereafter styled the Complainant, without the effective consent of the Complainant." *Id.* at 5. The *Allen* court noted that the indictment charged the offense in terms of the statute and gave adequate notice of the offense to the accused. *Allen,* 549 S.W.2d at 6.

Caro, relying on *Gardner*, raised this identical complaint in *Caro,* 761 S.W.2d 488. We rejected that argument noting that *Gardner* is distinguishable: *"Gardner* does not require a different result. In *Gardner,* this court concluded that the culpable mental states as set forth in section 31.07 modify both 'operate a motor vehicle' as well as 'without the effective consent of

the owner.'" *Caro,* 761 S.W.2d at 490. Thus, an indictment which tracks the language of the statute obviously sets out a mental state which modifies both "operate a motor vehicle" and "without the effective consent of the owner." We conclude that the indictment is sufficient to give adequate notice of the offense charged and overrule the first point.

### The Jury Charge

In his fifth point of error, Caro urges that the trial court erred in failing to instruct the jury that the State was required to prove that he drove the car "knowing it to be operated without the effective consent of Terry Knox, the owner thereof." The application paragraph read as follows:

> Now if you find and believe from the evidence beyond a reasonable doubt that in Dallas County, Texas, on or about the 22nd day of September, 1987, the defendant, Michael Tony Caro, did knowingly or intentionally operate a motor-propelled vehicle, namely, an automobile, without the effective consent of Terry Knox, the owner thereof, as alleged in the indictment, you will find the defendant guilty as charged.

The charge further defined intentional and knowing as defined by the Penal Code and included a defensive charge on mistake of fact. The trial court has the duty to deliver to the jury a written charge distinctly setting forth the law applicable to the case. TEX.CODE CRIM.PROC.ANN. art. 36.14 (Vernon Supp.1989). When the court's charge tracks the language of the applicable statutes, there is no error. *See Duffy v. State,* 567 S.W.2d 197, 204 (Tex.Crim. App.), *cert. denied,* 439 U.S. 991, 99 S.Ct. 593, 58 L.Ed.2d 666 (1978); *Massie v. State,* 744 S.W.2d 314, 317 (Tex.App.—Dallas 1988, pet. ref'd).

This charge tracks the language of section 31.07, as did the indictment. As this Court noted in *Caro,* the indictment's allegation of the culpable mental state in the statutory language properly modified both "operates a motor-propelled vehicle" as well as "without the effective consent of

the owner." *Caro,* 761 S.W.2d at 490. We conclude that this rule applies equally well to a jury charge that tracks the language of the statute and the indictment. We hold that the trial court did not err in refusing to submit Caro's requested charge because the charge as given adequately set out the requisite mental state. We overrule the fifth point.

### Sufficiency of the Evidence

In his seventh point of error, Caro contends that the evidence is insufficient to meet the State's burden to prove that he operated the vehicle knowing he did not have the owner's consent. The standard for appellate review of the sufficiency of the evidence is to view the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Garrett v. State,* 682 S.W.2d 301, 304 (Tex. Crim.App.1984), *cert. denied,* 471 U.S. 1009, 105 S.Ct. 1876, 85 L.Ed.2d 168 (1985).

■ Caro testified that Smith gave him keys to the Mustang and asked him to tint the windows. Caro further testified that he believed Smith was the owner of the car. Evidence revealed, however, that Caro had seen the Mustang in the possession of Terry Knox, not Smith. Further, the Mustang disappeared from the Stop 'N Go shortly after Caro's appearance, and when the Mustang was gone, Caro was gone. The car which Victor Rodriguez testified that Caro had taken was found parked behind the Stop 'N Go.[2] Knox's purse was in the car when it was taken, and the manager of the Deluxe Inn, where Caro was staying, returned the purse to her.

There was ample evidence tending to disprove Caro's testimony. The jury, as the trier of fact, is the sole judge of the weight and credibility of the evidence and may believe or disbelieve all or any part of any

witness's testimony. *Williams v. State,* 692 S.W.2d 671, 676 (Tex.Crim.App.1984). The jury was entitled to disbelieve Caro's testimony, in light of the conflicting evidence. We conclude that the evidence is sufficient to establish that Caro knowingly and intentionally operated the vehicle knowing that he did so without the effective consent of the owner, Terry Knox. The seventh point is overruled.

### DESCRIPTION OF THE AUTOMOBILE

■ Caro argues in the second point of error that the trial court erred in denying his motion to quash the indictment on the ground that it failed to specifically describe the motor vehicle as to "make, model or type of vehicle or some other identifying terminology." Caro relies upon article 21.-09 of the Code of Criminal Procedure, which provides that property alleged in an indictment "shall be identified by name, kind, number and ownership." TEX.CODE CRIM.PROC.ANN. art. 21.09 (Vernon Pamph.Supp.1989).

The State relies upon *Mears v. State,* 557 S.W.2d 309 (Tex.Crim.App.1977), in arguing that the indictment is sufficient. In that case, the indictment alleged merely that the defendant operated an automobile owned by the complainant. The defendant raised on appeal the same complaint presented by Caro. The court first noted that the complaint related to the certainty of the allegations and notice but that the defendant failed to complain of this notice defect at trial. However, the court went on to hold that the offense was charged in plain and intelligible language with such certainty as to have enabled the defendant to know what offense he was called upon to defend against. *Id.* at 310. In the instant case, Caro did file a motion to quash the indictment on the grounds of its failure to describe the automobile with specificity. Thus, *Mears* is distinguishable. The statement that the *Mears* indictment gives sufficient notice absent specific descriptive aver-

---

**2.** We recognize that Caro contends in the fourth point of error that the evidence regarding the taking of Rodriguez's car is inadmissible. Nevertheless, in judging sufficiency, we are to consider *all* of the evidence, whether admissible

or inadmissible. *See Roeder v. State,* 688 S.W.2d 856, 859–60 (Tex.Crim.App.), *cert. denied,* 474 U.S. 988, 106 S.Ct. 396, 88 L.Ed.2d 349 (1985); *see also Lockhart v. Nelson,* —— U.S. ——, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988).

ments is dictum, in light of the court's ruling that the defendant's failure to object at trial waived any error.

Nevertheless, we conclude that the indictment's property allegation is sufficient. In *Wood v. State,* 632 S.W.2d 734 (Tex. Crim.App.1982), the court held that an indictment charging the accused with receiving stolen goods sufficiently alleged the property as "One truck tractor" and "One automobile." Even in light of a motion to quash, these descriptive averments were held sufficient to apprise the defendant of the nature of the charge against him. *Id.* at 736–38. In *Inman v. State,* 650 S.W.2d 417 (Tex.Crim.App.1983), the court found no error in denying a motion to quash an information which alleged attempted theft of "an automobile." *Id.* at 420. The court noted specifically that the allegation was not insufficient under article 21.09. *Id.* at 421 n. 3. *See also Gaines v. State,* 501 S.W.2d 315, 317 (Tex.Crim.App.1973) (indictment alleging theft of "one automobile of the value of over $50.00" sufficient despite motion to quash).

We hold that the indictment's allegation sufficiently described the property so as to give Caro notice of the charge against him. Thus, the trial court did not err in denying the motion to quash. We overrule the second point of error.

### THE SEARCH

In the third point, Caro contends that the trial court erred in admitting into evidence the driver's license in David Lover's name because the police search was allegedly illegal. Police arrested Caro while he was attempting to leave a motel parking lot driving a stolen car. Officer Watson testified that after arresting Caro, he seized a billfold either from Caro's hand or from the driver's seat of the stolen car. The wallet, which was later determined to be stolen, contained a driver's license in the name of David Jenson Lover, two City of Duncanville traffic citations, and a toy security badge.

■■■ Caro does not contest the legality of the arrest; he attacks the search pursuant to the arrest. The police arrested Caro after watching him enter and drive a stolen vehicle. Police have the authority and duty to arrest persons committing felonies within their presence. TEX.CODE CRIM.PROC.ANN. art. 14.01 (Vernon 1977). A lawful custodial arrest authorizes a contemporaneous warrantless search of the person arrested and of the area within the immediate control of the arrestee. *Chimel v. California,* 395 U.S. 752, 762–63, 89 S.Ct. 2034, 2039–2040, 23 L.Ed.2d 685 (1969); *Gauldin v. State,* 683 S.W.2d 411, 414 (Tex.Crim.App.1984); *Caro,* 761 S.W.2d at 490. When a police officer makes a lawful custodial arrest of the occupant of an automobile, the officer may search the passenger compartment of that automobile as a contemporaneous incident of the arrest. *New York v. Belton,* 453 U.S. 454, 460, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768 (1981); *Osban v. State,* 726 S.W.2d 107, 111 (Tex.Crim.App.1986): *Caro,* 761 S.W.2d at 490.

■■■ Caro's complaint is that the evidence should be suppressed because the police officer was uncertain whether he recovered the wallet from Caro's hand or from the driver's seat of the car. In response to this complaint in *Caro,* 761 S.W.2d at 490, this Court stated:

> Incident to that [lawful] arrest, police were entitled to search Caro's person and the passenger compartment of the automobile. Although Officer Watson's testimony does not establish precisely where he found the wallet, it does limit the location to either Caro's person or the passenger compartment of the stolen car. Since Officer Watson could lawfully search both of these locations, we hold that the search was a legal contemporaneous search incident to a lawful custodial arrest.

*Id.* at 490. We adopt this holding and overrule the third point of error.

### EXTRANEOUS OFFENSE

In his fourth point, Caro contends that the trial court erred in admitting evidence of an extraneous offense. After Caro testified that a friend gave him possession of the car and that he did not know the car

was stolen, the State introduced evidence from Victor Rodriquez concerning the theft of his automobile.

 The general rule is that an accused may not be tried for some collateral crime or for being a criminal generally. *Williams v. State*, 662 S.W.2d 344, 346 (Tex.Crim.App.1983). To this end, an extraneous offense is usually not admissible. Extraneous offense testimony is not, however, always inadmissible. The test for determining the admissibility of any evidence, including evidence of extraneous offenses, involves a two-step inquiry: 1) whether the evidence is relevant to a material contested issue in the case other than the defendant's character; and 2) whether the probative value of the evidence outweighs its inflammatory aspects. *Robinson v. State*, 701 S.W.2d 895, 895 (Tex. Crim.App.1985); *Williams*, 662 S.W.2d at 346.

*Relevance to Contested Material Issue*

We must first examine the question of relevancy of the extraneous offenses to a material contested issue in this case. The indictment alleged that Caro knowingly and intentionally operated a vehicle without the owner's consent. "[W]here intent or guilty knowledge is an essential element of the offense which the State must prove to obtain a conviction, its materiality goes without saying." *Morgan v. State*, 692 S.W.2d 877, 880 (Tex.Crim.App.1985). Thus, Caro's knowledge and intent were material issues.

 Next, we must determine whether these material issues were *contested* issues in the case. Intent can be characterized as a contested issue for purposes of justifying the admission of extraneous offense evidence to help prove intent if the required intent for the primary offense cannot be inferred from the act itself or if the accused presents evidence to rebut the inference that the required intent existed. *McGee v. State*, 725 S.W.2d 362, 364 (Tex. App.—Houston [14th Dist.] 1987, no pet.). In the instant case, Caro denied stealing the car from the Stop 'N Go and claimed that he innocently came into possession of

the stolen car without knowing it was stolen. Thus, he clearly raised the issue of his culpable mental state.

Having determined that intent and knowledge were material contested issues, we turn now to whether the extraneous offense was relevant to the issues of intent and knowledge. The court of criminal appeals has observed:

[W]here the material issue addressed is the defendant's intent to commit the offense charged, the relevancy of the extraneous offense derives purely from:

the point of view of the doctrine of chances—the instinctive recognition of that logical process which eliminates the element of innocent intent by multiplying instances of the same result until it is perceived that this element cannot explain them all. Without formulating any accurate test, and without attempting by numerous instances to secure absolute certainty of inference, the mind applies this rough and instinctive process of reasoning, namely, that an unusual and abnormal element might perhaps be present in one instant, but that the oftener [sic] similar instances occur with similar results, the less likely is the abnormal element likely to be the true explanation of them.

*Plante v. State*, 692 S.W.2d 487, 491–92 (Tex.Crim.App.1985), *citing* 2 WIGMORE, EVIDENCE § 302 (Chadbourn rev. ed. 1979).

Caro argues that the extraneous offense is not relevant because the two incidents were not sufficiently similar. In *Morgan*, the court noted: "Before an extraneous offense is admissible to negate the possibility of accident under Wigmore's doctrine of chances, such offense must be sufficiently similar in nature to the charged offense that the inference of improbability of accident logically comes into play." *Morgan*, 692 S.W.2d at 881. However, the degree of similarity of offenses required is not as great where intent is the material issue as when identity is the material issue. *Cantrell v. State*, 731 S.W.2d 84, 90 (Tex.Crim. App.1987). The mere fact that certain dis-

similarities are present between the extraneous offense and the offense for which the accused is on trial does not make the extraneous offense inadmissible if the accused is clearly identified and shown to be the perpetrator of the extraneous offense. *Cantrell*, 731 S.W.2d at 90 n. 1, *citing Lewis v. State*, 674 S.W.2d 423, 425 (Tex. App.—Dallas 1984, pet. ref'd).

In the instant case, Caro was clearly identified as the perpetrator of the extraneous offense. Both the primary and the extraneous offense involved the taking of automobiles, with the keys rather than by "hot-wiring," in broad daylight from under the noses of the owners. We conclude that the extraneous offense was sufficiently similar in nature to the charged offense that the inference of improbability of accident logically comes into play. *Morgan*, 692 S.W.2d at 881. Thus, we hold that the extraneous offense evidence was relevant to the contested issues of intent and knowledge.

*Probative Value v. Prejudicial Effect*

The second step in the inquiry is to determine whether the probative value of the extraneous offense outweighs the prejudicial effect. *Robinson*, 701 S.W.2d at 895; *Williams*, 662 S.W.2d at 346. The Court of Criminal Appeals has used several factors to measure the probative value of an extraneous offense: 1) presence of similarity between the prior act and the offense charged; 2) closeness in time of the extraneous transaction to the charged offense; and 3) availability of alternative sources of proof. *Robinson*, 701 S.W.2d at 898.

We have already noted the similarities between the charged offense and the extraneous offense. There are, however, certain differences between the two. Nevertheless, we conclude that the similarities lend substantial probative value to the extraneous transaction. *See Id.* In addition, the two offenses were separated by only three days. Thus, the offenses were sufficiently close in time to have provided additional probative value. *Id.*

Perhaps the most troublesome ingredient of probative value is the availability of alternative sources of proof. *See id.; Morgan*, 692 S.W.2d at 880 n. 4. Where there is little or no controverting evidence offered by a defendant, it is clear that the use of an extraneous offense is unnecessary and offers virtually no probative value. *Prior v. State*, 647 S.W.2d 956, 959 (Tex.Crim.App.1983). The presence of some controverting evidence, particularly when presented in the form of a defensive theory, will enhance the probative value. *Robinson*, 701 S.W.2d at 895; *Albrecht v. State*, 486 S.W.2d 97, 101 (Tex.Crim.App. 1972). The court of criminal appeals considers whether the State's evidence is circumstantial or direct when examining this factor. *See Moore v. State*, 700 S.W.2d 193, 198 (Tex.Crim.App.1985), *cert. denied*, 474 U.S. 1113, 106 S.Ct. 1167, 89 L.Ed.2d 289 (1986). In essence, the touchstone for probative value appears to be whether the State *needs* the evidence to prove its case. The greater the need for the evidence, the more likely it will be admissible. *Wells v. State*, 730 S.W.2d 782, 785 (Tex.App.—Dallas 1987, rev. granted).

Proof of a culpable mental state generally relies on circumstantial evidence. *Dillon v. State*, 574 S.W.2d 92, 94 (Tex. Crim.App.1978). Not surprisingly, the State presented no direct evidence that Caro intentionally operated the vehicle knowing the owner did not consent. Further, Caro testified that he did not know the car was stolen. The defense's theory was obviously that Smith had stolen the car and that Caro had innocently acquired possession from him. Because of the circumstantial nature of proof of mental states, we conclude that there were no alternative methods of proof available to the State. Taking into account the various factors of substantial similarity, proximity in time, and presence of strong controverting evidence in the form of a defensive theory, we hold that the extraneous offense had substantial probative value as to Caro's intent and knowledge. We turn now to examine the prejudicial effect.

Courts have often noted the inherent prejudicial effect of using extraneous offenses. Prejudice arises "since the accused

has no notice he will be called to defend against it, and his 'propensity to commit crimes' is not material to whether he is guilty of the specified conduct which is charged by the State." *Robinson,* 701 S.W.2d at 899 (quoting *Williams,* 662 S.W.2d at 346). In *Robinson,* the court noted two ways in which the inherent prejudice may be lessened: 1) introduction of the evidence as a transaction rather than as a criminal offense; and 2) a proper instruction on the limited use of an extraneous offense.

The jury was never informed that Caro had been convicted of unauthorized use of a motor vehicle in the Rodriguez incident. Further, the State's jury argument concerning the extraneous offense was noninflammatory, focusing on the extraneous offense as proof of intent. We conclude these matters lessened the prejudicial impact of the extraneous transaction. In addition, the court's charge to the jury contained a proper instruction limiting the jury's consideration of the extraneous offense to the issues of "motive, intent, scheme or design." This instruction also lessened the prejudicial effect of the extraneous offense. Taking into account the noninflammatory presentation of the extraneous offense and the proper limiting instruction, we conclude that the prejudicial effect of the extraneous offense in this case was relatively low. Given the high probative value of the evidence and its lower prejudicial effect, together with its relevance to a contested material issue in the case, we hold that the extraneous offense evidence was properly admitted. Consequently, we overrule the fourth point of error.

## ASSESSMENT OF PUNISHMENT

▇ In point of error six, Caro argues that the trial court erred in denying his motion to have the jury assess punishment. The trial court denied the motion, noting that it was untimely. Caro concedes that his election to have the jury assess punishment was not made until the State had begun, and had almost completed, its voir dire examination. The trial court shall assess punishment unless a defendant elects jury assessment of punishment "in writing *before the commencement of the voir dire examination of the jury panel.*" TEX. CODE CRIM.PROC.ANN. art. 37.07, § 2(b)(2) (Vernon Supp.1989). *See also Postell v. State,* 693 S.W.2d 462, 464–65 (Tex.Crim.App.1985); *Teubner v. State,* 742 S.W.2d 57, 58 (Tex.App.—Houston [14th Dist.] 1987, pet. ref'd), *cert. denied,* — U.S. ——, 108 S.Ct. 2036, 100 L.Ed.2d 621 (1988).

Caro concedes that *Postell* "appears to be contrary" to his position. He argues, however, that the unusual circumstances of his case merit a different result. He points to his prior conviction before the same judge and with the same prosecutor in which the jury assessed punishment at eight years' confinement, his initial agreement to a plea bargain to accept in this case whatever punishment the jury assessed in the first case, and his decision to withdraw from that plea bargain. He avers that under these circumstances, "all parties surely knew that [Caro] intended to go to the jury on the issue of punishment." Further, he contends that those circumstances "created an atmosphere which so disrupted the nature of the proceedings as to result in the defense counsel overlooking the filing of the request."

We are not persuaded that the equities which Caro argues justify a holding that the trial court erred in following the clear requirements of the statute. Rather than concluding under these circumstances that Caro intended to go to the jury on punishment, the State could have concluded that since Caro was unwilling to accept a plea-bargain for a jury-assessed punishment of eight years, that Caro had decided to seek from a judge a lesser punishment than was assessed by a jury. This conclusion would merely be confirmed when Caro failed to file an election of jury punishment. Thus, the State would not be prepared to voir dire the venire about punishment. *See Postell,* 693 S.W.2d at 466 (Clinton, J., concurring).

To the extent that Caro is complaining that trial counsel was ineffective in overlooking the filing of the election, we note

**620**

that there is no evidence regarding Caro's desire at all times to go to the jury for punishment. Although defense counsel's unsworn statement to that effect is on the record, Caro was not called to testify. Obviously, counsel is not ineffective if he were merely following his client's wishes and his client belatedly changed his mind. The absence of evidence in this record on this vital issue prevents relief from being granted on direct appeal. *See Rodriguez v. State*, 691 S.W.2d 77, 81 (Tex.App.—Houston [1st Dist.] 1985, pet. ref'd). Because we conclude that the trial court properly denied Caro's untimely request for jury assessment of punishment, we overrule point of error six.

We affirm the trial court's judgment.